UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
        Plaintiff,             )
                               )
v.                             ) Case No.: 2:25-CR-20560-TGB-KGA
                               )
DAVID TAYLOR,                  )
                               )
        Defendant.             )

**DEFENDANT DAVID TAYLOR'S MOTION TO
RECONSIDER ORDER OF DETENTION**

NOW COMES Defendant, DAVID TAYLOR, by and through his attorneys, N. SCOTT ROSENBLUM and LAURENCE H. MARGOLIS, and for his Motion to Reconsider Order of Detention, respectfully requests that this Honorable Court grant Defendant's Motion for the reasons more fully set forth in Defendant's Brief in Support, which is hereby incorporated by reference.

Pursuant L.R. 7.1, Counsel for the defendant has sought concurrence from the Government to the relief requested in the Motion and as of this writing the Government has not concurred.

WHEREFORE, Defendant respectfully requests that this Honorable Court grants Defendant's Motion to Reconsider Order of Detention.

Respectfully submitted,

*/s/ Laurence H. Margolis*
Laurence H. Margolis (P69635)
**MARGOLIS & CROSS**
402 W. Liberty St.
Ann Arbor, MI 48103

i

(734) 994-9590 / Fax: (888) 320-9382
larry@lawa2.com

*/s/ N. Scott Rosenblum*
N. Scott Rosenblum (#33390MO)
Attorney for Defendant
120 S. Central Avenue, Suite 130
St. Louis, Missouri 63105
(314) 862-4332

Date: November 4, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Case No.: 2:25-CR-20560-TGB-KGA | |
| | ) | |
| DAVID TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF DEFENDANT DAVID TAYLOR'S MOTION TO
<u>RECONSIDER ORDER OF DETENTION</u>**

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

STATEMENT OF ISSUES PRESENTED ...................................................... iiiii

LAW & ARGUMENT ................................................................................................. 1

  I.    Statement of Law ............................................................................................. 1

  II.   The Government's proffer was wholly insufficient ......................................... 2

  III.  Additional text messages disprove the Government's allegations that
  Defendant was ordering church members to be deprived of sleep, food, or medical
  care. ........................................................................................................... 13

  IV.  Additional photographs and videos disprove the Government's Proffer that
  church members were deprived of sleep, food, or medical care. ........................... 19

  V.   Conclusion and Request for Relief .................................................................. 20

CERTIFICATE OF SERVICE ...................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*United States v. Salerno*, 481 U.S. 739 (1987) ................................................................ 1

*United States v. Orta*, 760 F.2d 887 (8th Cir. 1985) ................................................. 2, 18

*United States v. Toviave,* 561 S.W.3d 623 (6th Cir. 2014) ........................................... 6

*United States v. Bradley*, 390 F.3d. 145 (1st. Cir. 2004) ......................................... 6, 7

*Headley v. Church of Scientology Int'l,* 687 F.3d 117 (9th Cir. 2012) ......................... 7

*Muchira v. Al-Rawaf,* 850 F.3d. 605 (4th Cir. 2017) ...................................................... 7

*Taylor v. Salvation Army Nat'l Corp.*, 110 F.4th 101 (7th Cir. 2024) .......................... 7

*U.S. v. Calimlim*, 538 F. 3d. 706 (7th Cir. 2008) .......................................................... 7

*United States v. Townsend*, 897 F.2d 989 (9th Cir. 1990) ......................................... 18

**Statutes**

EDMI Local Rule 7.1(h) ................................................................................................. 1

18 U.S.C. § 1589(a) ....................................................................................................... 6

## <u>STATEMENT OF ISSUES PRESENTED</u>

Should the district court reconsider its Order of Detention and Grant the defendant Pretrial Release?

| | |
|---|---|
| David Taylor's Answer: | Yes |
| Plaintiff's Answer: | No |
| The Court should Answer: | Yes |

## LAW & ARGUMENT

COMES NOW Defendant David Taylor, by and through counsel, and hereby moves this Court pursuant to LR. 7.1 (h) to reconsider its October 28, 2025 detention order in this matter, showing the following in support.

Local Rule 7.1(h), "Motions for Rehearing or Reconsideration" states that**:**

> **(1)  Final Orders and Judgments.** Parties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). The court will not grant reconsideration of such an order or judgment under this rule.

> **(2)  Non-Final Orders.** Motions for reconsideration of non-final orders are disfavored. They must be filed within 14 days[1] after entry of the order and may be brought only upon the following grounds:

> (A)  The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;

> (B)  An intervening change in controlling law warrants a different outcome; or

> (C)  New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

## I.  Statement of Law

A criminal defendant is presumed innocent until proven guilty by evidence showing guilt beyond a reasonable doubt. To give meaning to the presumption of innocence embedded in the Sixth Amendment, the Bail Reform Act ("the Act") has a strong preference for release of the accused pending trial.  *See generally, United States v. Salerno*, 481 U.S. 739 (1987).

---

[1] This Motion is filed within these time strictures.

**Liberty is the norm under the Act, detention the carefully limited exception.** *See id.* at 755.  As one sister Circuit has noted:

> The passage of the pretrial detention provision of the 1984 Act did not...signal a congressional intent to incarcerate wholesale the category of accused persons awaiting trial. Rather, Congress was demonstrating its concern about a '*small but identifiable group of particularly dangerous defendants* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons.'

*United States v. Orta*, 760 F.2d 887, 890 (8th Cir. 1985) (quoting S. Rep. No. 225, 95th Cong., 1st Sess. 6-7 *reprinted* in 1984 Code Cong. & Ad.News at 3189) (emphasis added).

There is nothing dangerous about David Taylor, and the Court should not include him in that "small but identifiable group of particularly dangerous defendants" required to be held pending trial.  Notwithstanding the Government's claims, Taylor's apparent charisma, his personal appeal to those who choose to live by his church's dictates, and his private intimate relationships, far from showing he is a risk, shows the opposite.

## II.  The Government's proffer was wholly insufficient

The Government's proffer to this Court was based in overwhelming part upon stale (2017-2019) and misleading reports by a small group of former church members, the well-heeled ex-husband of a present church member, and at least one other longtime church antagonist. The Government has ambiguously and confusingly proffered to this court that it has identified eight former church members-victims, related to church activities and operations over eleven years and in 4 states. The Government contends these individuals were coerced to stay and work with the church that they had volunteered to join. The Government claims that these complainants, and maybe others, can offer evidence of acts and conduct allegedly by Taylor personally, or by other church members at Taylor's

direction, that caused them serious harm, and therefore, they were victims of illegally forced labor.

The Government's proffer wholly failed to include *specific facts* as opposed to general allegations.  Nor did the Government make any proffer of documented evidence to show the claimed "physical assaults" occurred, or that any person was deprived of food, shelter, or medicine. For instance, the Government was unable to support its proffer by pointing to the existence of medical records, photographs, UC recordings, or **any specific evidence of harm** to meet its high burden to show the defendant is clearly and convincingly a danger if released on bond. Simply put, the Government does not have actual evidence showing serious harm aside from its use of out-of-context text messages and vague allusions.

The Government's proffer also confused the Court by suggesting that this defendant personally punished church members with acts of violence, food deprivation, etc. But this is clearly unsupported, as the Government has failed to proffer any evidence of any person who claims that Taylor personally engaged in any of these acts. In fact, the opposite is true. The Government, at the co-defendant's bond hearing, acknowledged that **Taylor was not even present** when the alleged 'punishments' were imposed on the complainants:

> "And what is more terrifying about releasing her, is **David Taylor, at least, was in shutaway in North Carolina during the course of this**. Of course he terrorized the victims, everyone was afraid of him, but **he wasn't present with them**. Michelle Brannon was present with the victims. She was the one who imposed all the punishment. She was the face they saw on a day-to-day basis..."

In support of claims of his dangerousness and "terrorizing", the Government provided the Court only with some multiple-years-old text messages which were sent to his executive staff.  The Government failed to disclose to the Court that these messages were sent during

theological orientation, known within the church as a "boot camp."  This orientation was rigorous, but not harmful, and was voluntarily attended by every participant. The entirety of the Government's proffer was restating what it has generally alleged in the indictment.

In this regard it is worth mentioning one of Magistrate Grand's unanswered questions to government counsel during Co-Defendant Branon's initial bond hearing:

> "And just give me examples without names when you say physical assaults. Are there, are there people with broken bones? Are there people with knocked out teeth? Are there people who are emaciated from not having nutrition? I'm just trying to understand the facts behind the allegations of severe physical abuse."

Government counsel responded with the same repetition of the same bare bones and conclusory allegations contained within the body of the indictment and which she has similarly and only proffered in this case:

> "Your Honor, to be clear, the government has alleged psychological and physical abuse, sleep deprivation, food deprivation, denial of medical care, denial of contact with the outside world; the forced labor carried on in a number of different ways, not just mere physical abuse. **But I'll give you an example because it relates to another person** that Michelle Brannon has proposed to live with and that's Mr. …"

The Government then proceeded to claim that there was evidence this third party had physically assaulted "individuals within the organization." It is all ambiguity and conclusion, and it is insufficient 'evidence' to detain an individual with an unblemished criminal record, a history of acclaimed service and present health conditions. The Government's failure to identify the "individuals," the nature of the assault, or to even explicitly state that this third party did so to keep the individual from leaving so they could work, is also notable.

As this Honorable Court should have found here, Mag. Grand clearly found a lack of

factual specificity in the Government's proffer at the co-defendant's bond hearing:

> "...[T]he government's proffer to this point has been fairly lacking in detail about the type of actual harms that are alleged. And I read everything in the brief, and there's just not a lot of facts."[2]

There are not a lot of specific facts, despite what was apparently a seven-year investigation. The Government's repeated rendition of sweeping and conclusory facts - that Taylor and the church denied food on a regular basis - is false and mischaracterizing a hand-picked sampling of texts messages sent during church training periods. The Government's own evidence shows the church's annual food budget was huge, and that the church fed dozens (or hundreds) of people three meals a day, seven days a week.

The Government's claim that the church denied medical care to people is false and contradicted by text messages; *see infra* p. 13-15.

The church did not forcibly separate families, though it is true that some family members chose to worship in different locations. But children were never left alone or abandoned, nor harmed.

The Government's claim that the church regularly used physical violence to force labor is false and misleading. Church members were infrequently admonished, or rebuked, for certain transgressions, like smoking marijuana or otherwise not adhering to standards and expectations of behavior. The rebukes were never severe nor seriously harmful, were always in line with reasonable church practices, and were consented to by adult church members who chose to live the way they did. Moreover, children were never physically touched by anyone but their own parents, if ever, and any suggestion by the Government

---

[2] An unofficial transcription of the recording of M. Brannon's 9/30/25 Detention Hearing with Mag. Grand can be provided to the court upon request.

that children were subjected to violence or witnessed overt and extreme violence sanctioned by Pastor Taylor or the church, is categorically false and offered only to inflame this Court.

Equally irrelevant and misleading is the Government's oft repeated, salacious claims regarding Mr. Taylor's intimate relations with congregants or his affinity for viewing lawful pornography while living alone for the last six years in "shut away." The Government twists the facts to try and meet its burden, portraying consenting adults sharing risqué photos and videos as a purported weapon. It claims that because Taylor had this pornography that he could, would, or did use the material to extort, punish, or harm his former paramours, some of whom were former church members. But the ability to issue a potential threat in the future to someone you were intimate with, without more, does not show evidence of dangerousness to the public. It shows nothing more than the potential risks that flow from sharing intimate images with another person. A consenting adult who provides lawful selfies to another, without more, has no relevance to a charge of forced labor.

Equally flawed is the Government's repeated contention that Taylor used his position as church leader to unlawfully coerce these 8 named victims. This is not conduct sufficiently serious to coerce any named victim to provide the church labor or services against their will. *See* generally, *United States v. Bradley*, 390 F.3d. 145, 153 (1st. Cir. 2004)("To rely on some hidden or emotional flaw or weakness unknown to the employer [to determine if there was coercion] would raise serious problems - e.g. scienter. But…known objective conditions that would make the victim especially vulnerable to pressure (such as youth or immigration status) bear on whether the employee's labor was 'obtain[ed]' by forbidden means."). The offense of forced labor requires that the defendant have obtained the victim's labor through force, the threat of force, physical restraint, threat of physical restraint, serious harm,

threats of serious harm, or abuse or threatened abuse of law or legal process.  18 U.S.C. §
1589(a).  For the Government to argue that labor given freely based on a perceived religious
obligation is to federally criminalize a massive swath of voluntary contributions of everyday
citizens to their churches and temples.  *See e.g., United States v. Toviave,* 561 S.W.3d 623
(6th Cir. 2014) (holding that 18 U.S.C. § 1589 did not criminalize a parent obtaining their
child's labor, even via child abuse).

In short, the Government has proffered a misleading narrative about who the Apostle
is, what he means to a large and diverse group of people, and his impact on the free will of
consenting adults**,** all volunteers, who chose to be part of this church**,** who chose to remain
for some period, and who were always free to leave the church. The facts are that no one
person was ever forced to be part of this church or to remain a part of it. The Court has
heard a prosecutor's proffer based on a very limited set of stale allegations from a small
group of highly partisan and aggrieved ex-members as to their alleged experiences when
they *were* members/volunteers, and they since have left the church. There is no competent
evidence produced that shows harm, or that shows Pastor Taylor forced anyone to work for
the church. He may have wanted them to work when they were living at the church, but
that is a reasonable condition for remaining part of the church. As one court noted has noted
in a civil case with similar allegations as proffered here: "**If the plaintiffs believed they
were being overworked or did not like their working conditions, they could have
left at any time.**" *Taylor v. Salvation Army Nat'l Corp*., 110 F.4th 1017, 1032 (7th Cir.
2024),[3] citing to *Muchira v. Al-Rawaf,* 850 F.3d. 605, 620 (4th Cir. 2017); *U.S. v. Calimlim*,

---

[3] Much of the Government's proffer to the court in this case is similar to the Plaintiffs'
allegations found insufficient in *Taylor,* Id. ("The principal 'serious harm' alleged

538 F. 3d. 706, 712 (7th Cir. 2008) (emphasis added).

Taylor further shows that new information was recently provided to defense counsel by the Government in discovery and that this additional information contradicts the Government's narrative and undermines the sweeping claims made by the Government at the detention hearing.

The evidence is and will be clear that any volunteer or staff member could leave the church of their own free will at any time. The fact that they did not immediately leave, that they chose this life and to remain with the church, may go to show the complainants' weakness of character or after the fact change of heart, but it does <u>not</u> show that David Taylor unlawfully forced them to attend boot camps or work the prayer line phones. It surely does not show widespread and pervasive forced labor camps as the Government maintains.

Taylor has run his ministry for two decades, without incident. The Church has operated in full public view, on Facebook, Instagram, T.V., video stream and other media. He and his church seek worldwide promotion and attention. The Apostle has nothing to hide and is proud of the service he has performed to his communities of the faithful. All are welcome to join and to leave at their election.  Some who wish to stay may not be permitted to, if their conduct does not comport with the church's expectation. If one chooses to join the

---

discontinuation of food, clothing, and shelter allowances. But under the terms of the plan, these allowances are provided only during participation in the Salvation Army's program. They are simply components of participation in the program. The Salvation Army is entitled to stop providing food, clothing, and shelter to someone who no longer wishes to participate. It may also remind the participants that leaving the program results in the cessation of the benefits of the program. "The former is a legitimate consequence, the latter a legitimate warning." *Headley v. Church of Scientology Int'l,* 687 F.3d 1173, 1180 (9th Cir. 2012) (citing *United States v. Bradley,* 390 F.3d 145, 151 (1st Cir. 2004). "Neither supports a forced labor claim." *Id.)*

church, then the individual has made a choice to follow the dictates of the church. It is that simple.

The Government has egregiously overreacted, and it is attempting to second guess the decisions made by educated adults who choose to live and worship and work and volunteer as they did. It seeks to convince this Court that this successful modern religious organization is a criminal enterprise. It is not. David Taylor and Kingdom of God is a success story of a uniquely American type: a congregation built from nothing that was eventually successful and able to do countless acts of good in the world.

The Government's "evidence" in this case is thin, very thin. Its proffer is based solely on out-of-context, harmless text messages and long stale and previously investigated claims from aggrieved ex-church members. The Government fails to meet its burden by clear and convincing evidence to show David Taylor is a danger.

To reiterate some of his personal qualities and relevant historical facts, David Taylor started preaching the gospel as a teenager, when he was broke, homeless and sleeping on the floor of a shelter. Since that time, he has been openly preaching his gospel and running the Kingdom of God ministry. His ministry is a well-known modern religious organization, incorporated as a nonprofit, with a board of directors. It has been lawfully organized and assisted for years by reputable law firms, certified public accountants, and other professionals. Taylor has authored and published dozens of books, which have sold in the thousands, and which have been translated into many different languages. He has traveled the world with his parishioners and performed acts of charity which have earned him national, local, and worldwide recognition. Despite coming from very modest means, Taylor has risen to be the leader of a religious organization that is able to galvanize thousands

(from around the world) to travel to Detroit and attend his preachings. His religious organization has raised tens of millions of dollars from donors around the world. Despite the Government's mistaken claims of his bad character, Taylor has never been arrested in his life. He has received dozens of awards and accolades recognizing his philanthropic and civic contributions, including being a Recipient of the "Presidential Lifetime Achievement Award" from President Barack Obama and the Spirit of Detroit Award for his "exceptional achievement, outstanding leadership and dedication to improving the quality of life."  Taylor has had an in-person religious service in front of millions of Christians in Pakistan and he has held large scale events and cavalcades numbering in the tens of thousands all over the world. He regularly used church funds and resources to assist people in times of natural disasters, including organizing and paying for caravans of goods the church dispatched to those in need.[4]

Despite Taylor's many notable and documented achievements, the Government used Taylor's leadership position and persuasive abilities to successfully convince this court that Taylor was a danger if released on bond as was recommended by pretrial services.  At the conclusion of the hearing, the Court stated:

> "I have considered all the possible conditions that the Pretrial Services has suggested. Although, as I say, I think there are conditions that would prevent  him from fleeing, I don't see how simply having him stay in a residence that is paid for, I don't know how exactly, but to have him stay in a residence where his daily communication would be with individuals in that organization would protect the individuals in that organization from the kind of abusive and frankly cruel behavior that is set out in the indictment and was set out in the government's brief, particularly when engaging in that behavior would be in his interest in order to prevent witnesses from coopering in the case."

---

[4] Photos and videos in support are attached as Exhibits herein.

D67 at pg. 87, L.

Pretermitting the Government's claims, the ability of Taylor to communicate to his followers is simply not a danger to the public at large. Moreover, Pastor Taylor's communications have not been restricted, nor should they be. Theoretically, Taylor can still communicate with his faithful parishioners even if detained. If a defendant's ability to communicate to others is what makes him a danger to identifiable members of the community, then a district court can typically place restrictions on the methods, or recipients, of communications a defendant can make. But that misses the point. Taylor's church is still operating. His books have long been published; his adherents continue his preachings. That is their choice, and it is not illegal. While Taylor has been charged with these forced labor offenses, his religious organization has not. Kingdom of God Global Church continues to minister, hold services, lawfully raise money, and operate its business.

David Taylor is a self-made man who respects the law, performs, directs, and inspires acts of charity, and preaches civic service and religious devotion. A simple tour of his church in Taylor, Michigan reveals his love for this country, God, and people of all races and ethnicities. Large banners touting charitable causes and flags of every nation adorn the facility. Famous past preachers, most of whom also witnessed miracles and had large devoted adherents, are recognized with oversized photographs in the hallways, their life stories provided. Taylor's many books and publications and other church memorabilia fill large rooms. A state-of-the-art video system and massive projector screen fill a six-thousand padded-seat hall that is regularly used by the community and is a legitimate and wonderful house of worship. This defendant is devoted, passionate about his cause, and honest to a fault.

The fact that his church ran religious "boot camps" and at times sought to impose "rebukes" does not *ipso facto* make him a danger to the public, especially not when weighed against his proven track record of a crime-free life, charitable citizenship, and impressive civic recognition. The Pastor and his church members have First Amendment rights to practice their religion, and the exercise and practicing of that important First Amendment right *is* at the heart of this case. However, if necessary for this Court, Taylor would agree to certain restrictions on his ability to lead the church during the pendency of this case. For example, an independent monitor could have access to his church properties and report any perceived improprieties to the court. The boot camp trainings could be suspended. Taylor welcomes all to his church. So long as they were not disruptive to his worshipping congregants, he would welcome government agents to see and report back on church operations and activities. In fact, he already has. Taylor has devoted his entire adult life to preaching and teaching the Gospel of Jesus. He has been successful and has thousands of devoted followers in the U.S. and across the world. The Government has this case entirely wrong.

Indeed, the Government's claim of "8 identifiable victims" out of a class of thousands of parishioners and volunteers over the last two decades proves the hollowness and absurdity of the Government's claim, that Taylor, over many years and in four different states "terrorized and traumatized his workers for over a decade with actual violence, threats of violence, with sleep deprivation, medical deprivation and food deprivation." D67 at pg. 6, L1-6. However, as the Government is aware and has acknowledged, Taylor was in a "shutaway" for the 6 years prior to his arrest. Are we to believe that he "terrorized and traumatized his workers" via the text messages the Government relies upon? Especially

when those text messages were sent to intermediaries?

The entirety of the Government's submitted evidence was the text messages purportedly sent by Taylor to his executive staff.  These text messages were presented without context of any kind.  No pictures or police reports, no photos of squalid conditions, no medical records, nothing of substance or objective worth. Standing alone, the text messages show nothing but an expression of passive aggression from a frustrated Pastor in shut away. They do not show actions or conduct, nor does the Government provide any actual evidence they were acted upon. But texts messages without context are as damaging to one party as they are the other.

## III.   Additional text messages disprove the Government's allegations that Defendant was ordering church members to be deprived of sleep, food, or medical care.

At the hearing, the Government read from a series of text messages contained in the indictment, proffering that these text messages demonstrated that Defendant was directing that church members be deprived of sleep and food.  D62 at Pg. 10.  These text messages were several years old.  Based on the indictment, the messages that the Government relied upon were dated from May 5, 2021, to October 27, 2021, and from March 10, 2022, to October 20, 2022.  D1 Pg. 8-13.

Contemporaneous and more recent communications demonstrate the opposite; they show Taylor clearly telling his team members that they **should get more rest, ensure that they are eating healthily, and taking trips**. For example, on June 21, 2021, members of the church were taking children to the aquarium.  The next year, on June 17, 2022, members of the church were taking a trip to Disneyland and Universal Studios.  The

13

itinerary for this trip included time at the beach, laser tag, and planned pizza lunches.

With regards to food, ensuring that the church members had access to healthy food was of particular concern. This included avoiding dairy, ensuring that almond milk was available. It also included Defendant telling church members to make sure they got sufficient exercise and setting up groups of church members to help each other lose weight. The church provided food, including continental breakfasts and three meals a day, plus snacks.

The Government has put particular emphasis on allegations the church members were made to work through the night. The evidence will show the opposite. More recent messages from Defendant and his management team directed team members to take days off and/or sleep in. Of note is an August 21, 2025, message from Defendant to his "Executive Group," stating that if church members were going to be productive, they needed about "7-8 hours" of sleep, and that it defeats the purpose entirely if they did not get enough rest.

Defendant and his church always ensured the wellbeing, health, and happiness of his parishioners and volunteers. This can be demonstrated by just a sampling of the following text messages.[5]

For example:

a. On May 5, 2024, at 9:56pm, Defendant Taylor texted his Executive Group, "**No you'll rest, be restored and have fun.**"

b. On July 10, 2024, at 1:25pm, Kearisten Jones texted the KOGGC staff groups on behalf of Defendant Taylor regarding the lost power in wake of Hurricane Beryl,

---

[5] Texts may have been slightly edited by MS Word spellcheck. Copies of all referenced text messages are available and can be provided upon request.

"**With some of the people medical conditions we need to make sure they are first**! Also Michelle and joseph I want you'll to Look into immediately us getting a professional massive generator to back up the power of the whole building plus some extra !! WE CANT EVER ALLOW THIS TO HAPPEN AGAIN!! I see in order for us to operate we got to have this no doubt !! What is the size generator that we need for that whole hotel etc .. ?? Find out today !! Where can we place it ?? We just can't allow this to ever happen again !! How are those with medical conditions getting to their rooms ? Are the elevators working !? They need to be in rooms on the first floor and keep cold water and ice there!!"

c.  On July 10, 2024, at 1:28pm, Defendant Taylor texted his Executive Group, "Michelle and joseph orchestrate our 18 wheelers to fill up and go to Texas and help those in need !! Connect with fema or the government and ask what is needed and fill up those trucks and get those supplies down there !!"

d.  On July 10, 2024, at 1:34pm, Defendant Taylor texted his Executive Group, "Get our roof fixed immediately at the hotel and all leaks now !! All damage !! Get signs , lights on the building Fences up and all damages aggressively worked on etc. But the hotel roof, leaks damage and serious matters of the hotel are all first !!"

e.  On November 1, 2024, at 7:34am, J.J. texted the KOGGC hospitality group chat on behalf of Defendant Brannon, "Michelle said whoever is cooking can get extra rest!!"

f.  On December 14, 2024, at 10:11am, Defendant Brannon texted on behalf of Defendant Taylor, "After these memo's are read, Apostle wants the staff to take the whole day off and rest and party."

15

g. On January 6, 2025, at 5:03am, Defendant Brannon texted the OG Nine group, "I heard Aneta fell and broke her glasses. She can't see without them. We need to find out how she fell and make sure she's ok. Get her glasses fixed for now and maybe she can go get new ones."

h. On April 1, 2025, at 1:32am, Defendant Taylor texted his Executive Group, "Ok everyone get rest we will meet tomorrow!! Sleep in late until 12noon .. we will meet and start at 1 pm or 2pm."

i. On April 14, 2025, Defendant Taylor texted his Executive Group, "Start at 12 noon .. get more rest to sleep in."

j. On April 30, 2025 at 9:20pm, Defendant Taylor texted his Executive Group, "We will wake up late tomorrow sleep in."

k. On May 17, 2025, at 8:19am, Defendant Taylor texted his Executive Group, stating, "Sleep in rest well .., THERE WILL BE NO TRAINING.. Sleep in .. Let's have a barbecue tomorrow and study the word of God on zoom with me at 4pm-6pm ..!! Or at 7pm which ever is better !! Afterwards take the rest of the day off to do weekend stuff you have to do for yourself and prepare."

l. On May 20, 2025, at 10:08pm, Defendant Taylor texted his Executive Group, "Stop now !! Everyone go to bed !! Start at 10am."

m. On June 15, 2025, at 11:14pm, Defendant Brannon texted the "OG Nine" group chat, "I need you all to go to bed we are starting at 8am."

**n.** On August 21, 2025, at 6:39am, (**four days before his arrest**) Defendant Taylor texted his Executive Group, stating, "**Tell everyone to Get more rest start at 11am.. I told you'll it defeats the purpose when the people don't get the**

16

**rest they need about 7-8 hours and wake up too soon !!"**(Boldness added, typos in original.)

Further, on October 31, 2025, following the detention hearing, the Government provided counsel with a second discovery submission. The discovery contains police reports and records which clearly and unmistakably contradict the picture of this church that the Government has painted.

Review of the recent discovery submission shows that the Government has been investigating the church since 2017. These investigations were initially undertaken at the request of the ex-husband of a present parishioner who gave a large sum of money to the church after receiving her divorce settlement. This man, identified herein as "R.F." angered to a frenzy that his former wife had given the church over a million dollars, deposed Defendants Taylor and Brannon, in 2015, in the divorce case. Since at least that time, if not before, this man has waged a bitter personal and public vendetta against Taylor and his church. This antagonist is well-funded and has hired 'silk stocking' lawyers to work with him to try and get the church and specifically Taylor criminally prosecuted. He tried, in vain, to get Taylor and the church charged with tax fraud; in fact, R.F's high-priced lawyers' memorandums, regarding alleged tax improprieties, are part of the Government's recently provided discovery. R.F. and/or his attorneys repeatedly contacted the local police officers, FBI, state attorney generals, and others in a quixotic, decades long quest to get Tayor charged and the church discredited. This fact is clear from the Government's most recent discovery. Also clear is that this campaign to defame Taylor and have Taylor charged with a crime gained several adherents.  These are all former members, and almost certainly some are part of the "group of 8" the Government relies upon.

R.F., assisted by another, identified as "R.H.", have been harassing the church for years. They have sought to have it shut down and to have Taylor charged with a crime. Their barrage of unsubstantiated complaints, along with a small group of disgruntled ex-church members are the "facts" and fodder for the Government's mischaracterizing proffer. And while the defendant and the church have long been aware of these two individuals and their consistent antagonism toward the church over the past 10 years, the identity of the recently disclosed group of 8 victims was just made known and shared last week. As such, it was not until receiving the Government's discovery - that counsel has been able to review to date - that the defense could confirm and corroborate the heavy involvement with R.F. and R.H. and know the actual identifies of the aggrieved, all consenting adult ex-member "victims."

The evidence the Government's discovery submission provides, instead of corroborating their proffer, starkly contradicts the claims of unlawful coercion, present threats, or the harm to minors the Government claims was rampant and endemic to this religious organization. Included in the recent discovery are police reports *made by Taylor* and the church seeking protection from R.F. and his group. Included in the recent discovery are also reports where codefendant Brannon worked with and assisted investigators in 2018-2019 to provide EBT card information on members and purchases, to assure transparency and cooperation in the investigation. Included in the recent discovery are reports and recorded statements of Taylor and Brannon voluntarily speaking with the FBI, in 2018, as well as inviting law enforcement to come to the church and witness what goes on for themselves. Rather than running, hiding, or altering his behavior, Taylor demonstrated respect for the law and sought the law's protection for him and his church

18

members.

As discussed, the Government's other main arguments of supposed dangerousness were based on salacious hearsay representations about Taylor and were intended solely to provoke this Court and smear the defendant's character to keep him detained.  Taylor is not charged with a sex offense, the church is not charged with a sex trafficking offense, nor does the indictment allege any actual, specific threats of a similar nature were made to coerce labor for the church. The Government is clearly aware of its absence of any evidence on this incendiary issue, repeatedly proffering that "it is the newly developing evidence".

Consistent with the intent of Congress, the Bail Reform Act encourages release of the accused pending trial provided some condition or combination of conditions can *reasonably assure* the appearance of the accused at trial and the safety of the community or any other person.  *See Orta*, 760 F.2d at 890-91 (emphasis added).  To further this end, the Act provides a "wide range of restrictions."  *Id*. at 891.  Doubts regarding the propriety of release should be resolved in favor of the accused.  *See United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

Reconsideration of the detention order is appropriate here, because of the recent availability of additional information demonstrating the existence of provable facts completely contrary to the Government's proffer and because the Government's mischaracterizations of the conclusions it relied upon resulted in this court making an erroneous decision to detain.

## IV.   Additional photographs and videos disprove the Government's Proffer that church members were deprived of sleep, food, or medical care.

The attached Exhibits further exemplify Taylor's charitable acts, caring for his

19

church members and communities nationwide and are submitted as recently obtained evidence in support of defendant's proffer at the hearing, and what is outlined via proffer in this Brief.

## V.      Conclusion and Request for Relief

David Taylor is not a danger to the community.  He has been a law-abiding citizen for the past 53 years. The Government's proffer of his supposed criminality, based on aggrieved ex-church members and some non-contextual text messages is insufficient to meet its rightfully high, clear and convincing burden, and especially so in light of the overwhelming evidence of positive renown Pastor Taylor and his church have received over so many years, by so many faithful Christians.

For all the foregoing reasons, Defendant David Taylor respectfully requests that this Honorable Court:

a.  Reconsider its Order of Detention;

b.  Grant the defendant Pre-trial Release; or

c.  Hold a hearing at the next practicable date, allowing the Defendant to present additional evidence and argument.

This 4th day of November, 2025.

Respectfully submitted,

/s/ Laurence H. Margolis
Laurence H. Margolis
(P69635) Attorney for
Defendant

/s/ N. Scott Rosenblum
N. Scott Rosenblum (#33390MO)
Attorney for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANT'S MOTION TO RECONSIDER ORDER OF REVOKE DETENTION** upon all attorneys of record for this matter via the Case Management/Electronic Case Files (CM/ECF) system for the UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

this 4TH day of November, 2025.

Respectfully submitted,

/s/ Laurence H. Margolis
Laurence H. Margolis
(P69635) Attorney for
Defendant

/s/ N. Scott Rosenblum
N. Scott Rosenblum (#33390MO)
Attorney for Defendant
120 S. Central Avenue, Suite 130
St. Louis, Missouri 63105
(314) 862-4332