UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

                                   Criminal No. 25-20560

           Plaintiff,         Hon. Terrence G. Berg

v.

D-1 David Taylor,

           Defendant.

_____/

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION TO RECONSIDER

The United States, by and through undersigned counsel, respectfully submits this memorandum in opposition to the Defendant DAVID TAYLOR's Motion to Reconsider Order of Detention, filed November 4, 2025.  (Doc. 64).  Because TAYLOR is unable to satisfy the appropriate standard under the Bail Reform Act to reopen the detention hearing, and because he is unable to satisfy his proposed standard for reconsideration under Local Rule 7.1(h), the Court should deny the motion.

## PROCEDURAL BACKGROUND

On July 23, 2025, a federal grand jury in the Eastern District of Michigan indicted TAYLOR and his co-defendant, Michelle Brannon, on one count of Conspiracy to Commit Forced Labor in violation of 18 U.S.C. § 1594(b) (Count One); six counts of Forced Labor in violation of 18 U.S.C. § 1589 (Counts Two through Seven); and one count of Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h) (Count Ten). (Doc. 1). TAYLOR is charged with an additional two counts of Forced Labor in violation of 18 U.S.C. § 1589 (Counts Eight and Nine). (Doc. 1).

On August 27, 2025, FBI agents arrested TAYLOR in Durham, North Carolina, and arrested co-defendant Michelle Brannon in Tampa, Florida. On the same day, TAYLOR requested a detention hearing in the Eastern District of Michigan and consented to detention until he arrived in Michigan. Brannon made the same request in Tampa, Florida; the government filed a motion for detention in advance of Brannon's initial appearance in Tampa. *See United States v. Brannon*, No. 8:25-mj-2871, Doc. 2 (M.D. Fla. Aug. 27, 2025).

Brannon arrived in the Eastern District of Michigan before

TAYLOR.  On September 29, 2025, in the Eastern District of Michigan, the government filed a memorandum in support of detention as to Brannon.  (Doc. 30).  On September 30, 2025, Magistrate Judge David R. Grand held a detention hearing regarding Brannon and released her with conditions.  On October 1, 2025, this Court held a hearing on the government's appeal of the decision to release Brannon and affirmed the decision, while setting additional conditions of release.

On October 14, 2025, the government filed its memorandum in support of detention as to TAYLOR, proffering factual allegations and setting forth legal analysis in support of detention.  (Doc. 47).  The factual allegations and legal analysis in this memorandum were similar to those set forth in the government's memorandum in support of detaining Brannon.  (Doc. 30).  On October 16, 2025, TAYLOR filed a responsive brief arguing for release.  (Doc. 48).  On October 17, 2025, Magistrate Judge Kimberly Altman held a detention hearing and ordered the detention of TAYLOR pending trial.  (Doc. 56).  TAYLOR appealed that detention order and filed a Motion to Revoke Detention Order, pursuant to 18 U.S.C. § 3145(b), and a separate Memorandum in Support of Release from Detention.  (Doc. 53, 57).  On October 21, 2025,

this Court held a hearing on TAYLOR's appeal of the detention order and declined to revoke Magistrate Judge Altman's detention hearing. At this hearing, TAYLOR produced exhibits and called and vigorously examined a witness to support his argument for release.

On November 4, 2025, TAYLOR filed the Motion for Reconsideration of Order of Detention currently before the Court.  (Doc. 64).  The Court subsequently ordered the government to respond to the motion.  (Doc. 66).

## ARGUMENT

### I.   The Bail Reform Act

#### A. Local Rule 7.1(h) is Not the Appropriate Vehicle for Appealing the Detention Order

TAYLOR has requested that the Court reconsider its order of detention pending trial pursuant to Local Rule 7.1(h)(2).  But this Local Rule is not the appropriate vehicle for review of the Court's detention order.  Rather, the Bail Reform Act, which sets forth specific procedures for appeal of a detention order or reopening of a detention hearing, is the correct vehicle.  18 U.S.C. §§ 3145, 3142(f).

Specifically, 18 U.S.C. § 3145 provides that "[a]n appeal from a release or detention order, or from a decision denying revocation or

amendment of such an order, is governed by the provisions of Section 1291 of Title 28 [28 USCS § 1291] and Section 3731 of this Title [18 USCS § 3731]. The appeal shall be determined promptly." 18 U.S.C. § 3145(c). Section 3731 applies to appeals by the United States and, thus, is not relevant here. 18 U.S.C. § 3731. Section 1291 of Title 28 provides that "[t]he courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." As 28 U.S.C. § 1291 indicates, and as other courts have held, a pretrial detention order is considered a final order. *See United States v. Salerno*, 481 U.S. 739, 752 (1987) (finding that the Bail Reform "Act's review provisions, § 3145(c), provide for immediate appellate review of the detention decision"); *United States v. Adams*, No. 23-3403, 2023 U.S. App. LEXIS 19725, at *1 (6th Cir. July 31, 2023) ("Immediate appeals are authorized . . . from a pretrial detention order 'or from a decision denying revocation or amendment of such order.'") (quoting 18 U.S.C. § 3145(c)); *United States v. Esquivel-Bataz*, 155 F.4th 491, 492-93 (5th Cir. 2025) (holding that the circuit court had "jurisdiction under 18

U.S.C. § 3145, which treats a pretrial detention order as an appealable final order under 28 U.S.C. § 1291" and affirming the district court's order of pretrial detention).

In addition, § 3142(f)(2)(B) specifically provides that

[t]he [detention] hearing may be reopened before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

18 U.S.C. § 3142(f)(2)(B).  Thus, the Bail Reform Act specifically provides procedures for appealing a district court's detention order or reopening a detention hearing and is the appropriate vehicle for TAYLOR to seek review of the Court's detention decision.

## B. TAYLOR Fails to Meet the Bail Reform Act Standard to Reopen a Detention Hearing

The arguments in TAYLOR's motion for reconsideration also fail to meet the Bail Reform Act standard for reopening the detention hearing.  Under § 3142(f)(2)(B), a court has discretion to reopen a detention hearing if it finds that "(1) new information exists that was not known to the defendant at the time of the original hearing, and (2)

6

that information 'has a material bearing on the issue [of] whether there are conditions of release that will reasonably assure' the defendant's appearance and the safety of any other person and the community." *United States v. Willis*, No. 24-cr-20187, 2025 WL 2700594, at *1 (E.D. Mich. Sept. 22, 2025) (quoting 18 U.S.C. § 3142(f)(2)(B)); *see also United States v. Watson*, 475 F. App'x 598, 600 (6th Cir. 2012) ("We have held that the use of the word 'may' as opposed to 'will' . . . implies that the district court has discretion in determining whether to grant the motion."). "In other words, the new information must be of a nature that would increase the likelihood that the defendant will appear at trial and would show that the defendant is less likely to pose a danger to the community." *Watson*, 475 F. App'x at 600; *see also United States v. Sandles*, 9 F. App'x 377, 379 (6th Cir. 2001) ("[T]o justify reopening the detention hearing, the information had to be sufficiently material to the issue of dangerousness."). Courts interpret the requirement for "new" information "strictly, requiring a showing of truly changed circumstances or a significant event." *United States v. Bothra* (*Bothra II*), No. 20-1364, 2020 WL 2611545, at *1 (6th Cir. May 21, 2020). "[I]nformation is not new if it could have been presented at

the previous hearing." *United States v. Bothra* (*Bothra I*), No. 19-1953,
2019 WL 8883664, at *1 (6th Cir. Nov. 5, 2019).

TAYLOR is unable to satisfy this standard—he presents no new
information that would justify reopening, and what information he does
present has no bearing on his likelihood of appearance or the danger his
release may pose to the community.

## 1. TAYLOR Has Presented No New Information

In his motion, TAYLOR fails to present any new information that
was unknown to him at the time of the original hearings. *See Willis*,
2025 WL 2700594, at *1. Nearly twelve pages of his motion fall under
the heading "The Government's proffer was wholly insufficient." (Doc
64, p. 7). Throughout these pages, TAYLOR makes the same
arguments he raised at the original detention hearing on October 17,
2025, (Tr. of Detention Hearing at 19-40, Doc. 67, *United States v.
Taylor*, No. 2:25-cr-20560 (E.D. Mich. Oct. 17, 2025)), at the appeal of
the detention order before this Court on October 21, 2025, (Tr. of Motion
Hearing at 28-62 & 70-72, Doc. 62, *United States v. Taylor*, No. 2:25-cr-
20560 (E.D. Mich. Oct. 21, 2025), and in multiple memoranda in
support of his request for release (Docs. 48, 53, 57). TAYLOR's vague

and conclusory attacks on the sufficiency of the government's proffer—
set forth in the government's 47-page memorandum in support of
detention (Doc. 47) as well as through its proffers at the detention
hearing and appeal—are not new. TAYLOR made these same
arguments in his briefs and at the detention hearings. These
arguments do not justify reopening of the detention hearing under §
3142(f)(2)(B). *See United States v. Jerdine*, No. 08-481, 2009 WL
4906564, at *3 ("New and material information for Section
3142(f)(2)(B) purposes consists of something other than a defendant's
own evaluation of his character or the strength of the case against him:
truly changed circumstances, something unexpected, or a significant
event.").

Furthermore, TAYLOR's repeated attempts to manipulate the
detention proceedings into a trial on the merits run contrary to the
strictures of the Bail Reform Act. While the government looks forward
to satisfying its burden of proof in a trial on the merits of this case,
detention proceedings do not permit such a trial. *See United States v.
Stone*, 608 F.3d 939, 948 (6th Cir. 2010) (finding that the weight-of-the-
evidence factor under § 3142(g) "goes to the weight of the evidence of

dangerousness, not the weight of the evidence of the defendant's guilt");

*United States v. Shaughnessy*, No. 3:20-cr-60; 2020 WL 5390766, at *5

(W.D. Ky. Sept. 8, 2020) ("[T]he merits of [defendant's] defense to

prosecution are irrelevant at this stage. The Court's statutory

obligation to consider the weight of evidence against a defendant in a

detention hearing is focused on evidence of *dangerousness*, not guilt.")

(emphasis in original); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C.

Cir. 1996) ("A pretrial detention hearing [] is neither a discovery device

for the defense nor a trial on the merits.").

In addition, the text messages that TAYLOR provides are not

new, nor is the information regarding individuals identified as "R.F."

and "R.H.", who TAYLOR alleges have harassed TAYLOR and Brannon

for years. The texts TAYLOR quotes date between May 5, 2024, and

August 21, 2025[1]—they all existed at the time of the detention hearings

in October 2025. Thus, because TAYLOR had ample opportunity to

present these messages at the two detention hearings or in any of his

briefs submitted before the hearings, *Bothra I*, 2019 WL 8883664, at *1,

and because they do not show truly changed circumstances or a

---

[1] The timeframe of the conspiracy charge in the Indictment is April 2013 through
July 2025.

significant event, they do not satisfy the first requirement of 18 U.S.C. § 3142(f)(2)(B).  *See Bothra II*, 2020 WL 2611545, at *1.

Furthermore, TAYLOR's claims regarding R.F. and R.H. were known to TAYLOR at the time of the detention hearings.  Specifically, TAYLOR claims that R.F. has "waged a bitter personal and public vendetta against Taylor and his church" since approximately 2015, and that R.F., assisted by R.H., "have been harassing the church for years." (Doc. 65, p. 22-23).  Because TAYLOR had ample opportunity to present the allegations relating to R.F. and R.H. at the two detention hearings or in any of his briefs submitted before the hearings, *Bothra I*, 2019 WL 8883664, at *1, and because it does not show truly changed circumstances or a significant event, it too does not satisfy the first requirement of 18 U.S.C. § 3142(f)(2)(B).  *See Bothra II*, 2020 WL 2611545, at *1.

Finally, TAYLOR briefly claims that "[a]dditional photographs and videos disprove the Government's Proffer that church members were deprived of sleep, food, or medical care."  (Doc. 64, p. 25-26). Although the photographs and videos are undated, their contents indicate that they are not new information.  Indeed, they all appear to

have been created by KOGGC/JMMI.  All the videos—except that

entitled "limo"—appear to be compilations of videos or full videos that

were posted to TAYLOR and JMMI's public YouTube page or their

website years ago.[2]  Thus, because these photographs and videos could

have been presented at the original detention hearings, *Bothra I*, 2019

WL 8883664, at *1, and because they do not show truly changed

circumstances or a significant event, they too do not satisfy the first

requirement of 18 U.S.C. § 3142(f)(2)(B).  *See Bothra II*, 2020 WL

2611545, at *1.

### 2. TAYLOR Has Presented No Information Material to His Likelihood of Appearance or the Danger He Would Pose If Released

Perhaps more importantly, the information that TAYLOR

presents in his motion has no bearing on "'whether there are conditions

of release that will reasonably assure' the defendant's appearance and

the safety of any other person and the community."  *Willis*, 2025 WL

2700594, at *1 ((quoting 18 U.S.C. § 3142(f)(2)(B).

Far from undercutting the government's evidence of coercion, the

select texts quoted by TAYLOR further illustrate the extensive coercive-

---

[2] https://www.youtube.com/@DavidETaylorMiraclesinAmerica/videos

control TAYLOR exercises over KOGGC/JMMI workers.  The texts in

TAYLOR's motion and in the government's memorandum demonstrate

that TAYLOR himself directed when and for how long workers were

permitted to sleep, when they were permitted to take a day off, and

when they were permitted to have "fun."  (Doc. 64, p. 19-22; Doc. 47, p.

11-14 & 15-19).  Reading these select texts in isolation is misleading—

other communications sent close-in-time put these texts into context

within the coercive scheme. [3]  For example, in his motion, TAYLOR

quotes a text from May 17, 2025, at 8:19 a.m., in which TAYLOR wrote,

in part:

> Sleep in rest well . . . . Let's have a barbecue tomorrow and
> study the word of God on zoom with me . . . . Afterwards take
> the rest of the day off to do weekend stuff you have to do for
> yourself and prepare.

(Doc. 64, p. 16).  But less than eight hours before, at 12:50 a.m. on May

17, 2025, TAYLOR texted the same group chat of 36 KOGGC/JMMI

workers, including floor managers, closers, and executives, stating:

> BOTTOM APPRENTICE EARNERS
> Your numbers show that you are lazy , inconsistent up and
> down ,not stable on a daily basis ! It's time for you to be
> forced with greater hard labour to get you out of this rutt to

---

[3] For the sake of brevity, the government has provided context for only a few examples of texts cited in TAYLOR's motion.  The government can provide additional examples should the Court so desire.

be obedient!! It's time for you to suffer !
THESE BELOW MUST BE PUNISHED AND PRESSURED
TO DO THEIR WORK HERE !! I want intense consequences
of intense hard Labor Day after day night after night for
these below until they obey and decided that this is easier to
do Gods work inside than being outside on the street[4] !! Cut
out giving them the best food etc ! Keep them on a resident
michelle until they obey consistently!! With the top
apprentices they just need more training to overcome and
consequences on the street at times to force them to obey and
go to the next level but these bottom they are just rebellious
and have to get strict consequences until they obey !! [list of
12 member names follows]

And just shortly before that, on May 16, 2025, at 11:58 p.m., TAYLOR

wrote the same group:

If the bottom 6 don't push to bring in at least $7.5k to $8k a
day you are not doing your work !! . . . . I'm going to start
putting you on the street to do hard labour if you don't stop
this dragging and not paying attention to reach your
numbers !! GROUP #2 - BOTTOM 6 TOP 🔝
CONNECTORS AND CLOSERS The Top 🔝 3 should be
bringing in no less that $15k to $20k per day with their
training !! I'm going to do the same to them if they don't stop
bringing in low numbers beneath this everyday !!

Likewise, TAYLOR included in his motion a quote from texts sent

through an intermediary on May 20, 2025, at 10:08 p.m., in which

---

[4] The government's evidence indicates that, throughout these messages, when
TAYLOR writes "put outdoors" or "stay outside" or the like, he is referring to his
practice of punishing workers by sending them outside to perform labor such as
trash pickup or by making them sleep on the streets overnight.

TAYLOR stated:

> Stop now !! Everyone go to bed !! Start at 10am.

(Doc. 64, p. 21).  Note that this text indicates that workers were still

working after 10 p.m.  Shortly thereafter, at 10:12 p.m., TAYLOR

texted the group,[5] stating:

> Tomorrow is the day to reset and catch up your rest so you
> can do your work !! No one but Tyrell and Matt stay outside !
> I'm giving everyone a chance to get rest and do their job
> tomorrow or else you're going outside !!
> But I still need to see the list from today to see how each one
> did !!

In addition, earlier the same day, on May 20, 2025, at 1:32 a.m.,

TAYLOR again texted the group, stating:

> ✅ JUDGEMENT AND PUNISHMENT STANDARD
>
> In order to not get put on the street
>
> WHAT IM LOOKING FOR IN YOUR NUMBERS ..
> 1). Your CLOSING numbers must show at the level they
> should for the abilities and skills for the level you're on and
> that you have learned and been trained . . . .
>
> PUT OUTDOORS
> 1). [name of worker] - numbers too low - rebellion level
> 2). [name of worker] - numbers too low - disobedient level
> 3). [name of worker]- numbers to low - disobedient level and
> rebellion

---

[5] At 10:30 p.m. on May 20, 2025, Michelle Brannon forwarded TAYLOR's message to another group chat of 35 workers.  This forwarding of TAYLOR's messages through intermediaries was a common way of disseminating TAYLOR's instructions to additional KOGGC/JMMI workers.

4). [name of worker] - numbers very low - Rebellion and stubborn level

5). [name of worker]- numbers very low - Rebellion and stubborn level

6). [name of worker] - numbers very low - rebellion and stubborn level

7). [name of worker] - numbers too low for the skills and level you supposed to be striving for - disobedient
_____

[Names of two workers] needs to be put out together tonight but separately for 3 days !! I'm done talking with them !! Their numbers are at a very evil 😈 level and dimension after talking to them !! I want them picking up trash for 3 days straight .. find their own food etc !!
[Name of worker] numbers should be higher than that !!

In addition, TAYLOR included in his motion a text to the group from August 21, 2025, at 6:39 a.m., in which he stated:

Tell everyone to Get more rest start at 11am.. I told you'll it defeats the purpose when the people don't get the rest they need about 7-8 hours and wake up too soon !!

(Doc. 64, p. 21-22). Far from indicating concern for workers' well-being, this and the surrounding texts show that TAYLOR was fixated on the amount of money workers brought in and concerned only that workers who did not sleep were less able to bring in substantial money. Other texts around the same time provide additional context. TAYLOR texted the group 10:17 p.m. on August 21, 2025:

[worker name] you are only at 2k all day !! You going outside tonight

16

Everyone send stats in [on money raised] !!

And a day-and-a-half earlier, on August 19, 2025, at 10:25 p.m.,

TAYLOR sent the group a long message, including the following:

> ✅ !! READ OUT LOUD !! NOW !!
>
> QUESTION ??
>
> Why are we only at $18k tonight !?? Michelle and you floor
> managers get on top of this !! What's the freak is going on ? I
> asked a questioned ! Why are things soo low !! ? Finding out
> ?? You as a floor manager should know !! It shows you are
> not on top of them !! . . . .
> NOW FIND THE FREAK OUT WHAT HAPPENED!! These
> are all excuses and lies !! Because when all of you are doing
> bad it's because you all are doing evil and disfocused
> especially when michelle is not over you making you do what
> you know you should be doing !! I don't buy your lies !!
> You've all been doing this too long to mess up a major day !! I
> can't believe you would lie to me to my face !!!
>
> I want everyone out doors picking up trash starting with the
> top 🔝 9 for 2 hours immediately after tonight !! After this
> starting tomorrow all who is doing this will be going on the
> street for 15 days picking up trash tirelessly!! I'm not going
> to put up with your crap!!

The government included in its detention memorandum the

sampling of texts from the Indictment time-period to illustrate the level

of coercive-control TAYLOR maintains over members, which is relevant

to the danger TAYLOR poses were he released on bond.  Indeed, these

texts exemplify what Congress recognized when enacting the Victims of

Trafficking and Violence Protection Act of 2000—that traffickers use "increasingly subtle methods [to] . . . place their victims in modern day slavery." H.R. Conf. Rep. 106-939, 100-01, 2000 WL 1479163 (2000). The additional, more recent texts provide further evidence of that coercive-control TAYLOR continues to maintain over his followers and of the danger he poses to any other person and the community; they do not provide a basis for reopening the detention hearing. 18 U.S.C. § 3142(f)(2)(B).

In addition, TAYLOR's allegations that R.F. and R.H. "have been harassing the church for years," (Doc. 64, p. 23), have no "'material bearing on the issue [of] whether there are conditions of release that will reasonably assure' the defendant's appearance and the safety of any other person and the community." *Willis*, 2025 WL 2700594, at *1 (quoting 18 U.S.C. § 3142(f)(2)(B)). TAYLOR presents this narrative of an alleged "personal and public vendetta" in an attempt to challenge the government's forced labor charges. But, particularly in the Sixth Circuit, courts have declined to allow pretrial detention proceedings to devolve into a mini-trial on the merits. *See Stone*, 608 F.3d at 948; *Shaughnessy*, 2020 WL 5390766, at *5 (W.D. Ky. Sept. 8, 2020); *Smith*,

79 F.3d at 1210.  The government does not rely on R.F. or R.H. for its evidence relating to TAYLOR's dangerousness or risk of flight and TAYLOR's allegations of harassment are entirely unrelated to these considerations under the Bail Reform Act.  Furthermore, even briefly engaging with TAYLOR on the merits of this proffered defense, neither R.F. nor R.H. is a named victim in the Indictment and the government's evidence in support of the forced labor charges is not dependent on or even related to R.F. or R.H.  Because these allegations regarding R.F. and R.H. have no bearing on TAYLOR's dangerousness or whether there are conditions of release that will reasonably assure his appearance, they do not provide a basis for reopening the detention hearing.  18 U.S.C. § 3142(f)(2)(B).

Finally, the photos and videos attached to TAYLOR's motion do not disprove the government's evidence that workers were deprived of sleep, food, or medical care.  The government has reviewed all the photographs and videos provided by TAYLOR and has been able to identify only a single named victim in the background of one video, participating in an event.  These undated photos and videos do not chronicle every moment of every day experienced by the named victims

in the Indictment timeframe.  Thus, these few images and videos selected by TAYLOR do not "disprove" the charges alleged in the Indictment; they merely represent the glossy surface of KOGGC/JMMI that enabled TAYLOR to recruit workers and solicit approximately $50 million since 2014 for his benefit.

Moreover, as discussed above, the isolated images and videos do not have a material bearing on TAYLOR's dangerousness or whether there are conditions of release that will reasonably assure his appearance, and do not provide a basis for reopening the detention hearing.  18 U.S.C. § 3142(f)(2)(B).

In this case, TAYLOR failed to follow the procedures for appealing the district court's detention decision or reopening the detention hearing as set forth in the Bail Reform Act.  18 U.S.C. §§ 3145(c), 3142(f)(2)(B).  But even assessing the information and allegations in TAYLOR's motion under the appropriate standard set forth in § 3142(f)(2)(B), TAYLOR's motion fails as it does not present any new information unknown to him at the original detention hearings, and the information it does present has no material bearing on whether there are conditions of release that will reasonably assure TAYLOR's

appearance and the safety of any other person and the community. 18

U.S.C. § 3142(f)(2)(B); *Willis*, 2025 WL 2700594, at *1.  Accordingly,

this Court should deny the motion for reconsideration under the

applicable standard set forth in the Bail Reform Act.

### C. Even Under Local Rule 7.1(h), the Motion Fails on the Merits

TAYLOR's motion for reconsideration under Local Rule 7.1(h)(2)

also fails on the merits.[6]  LR 7.1 is a civil local rule that is cross-

referenced by Local Criminal Rule 12.1(a), which provides that

---

[6]Local Rule 7.1(h)(2) provides the standard for a motion for reconsideration of a "non-final order" whereas LR 7.1(h)(1) provides a procedure for seeking reconsideration of a final order.  LR 7.1(h)(1)-(2).  This provision of LR 7.1 was amended in December 2021 to distinguish between final and non-final orders; prior to 2021, the standard for seeking reconsideration of either a final or a non-final order was the same.  The government has found only a handful of cases involving a motion to reconsider a district court order of detention that predate the 2020 amendment.  *See United States v. Shabazz*, No. 14-cr-20339, 2015 WL 7770856 (E.D. Mich. Dec. 3, 2015) (declining to rule on a renewed motion for bond under LR 7.1 and denying the motion for revocation of detention order under 18 U.S.C. § 3142(f)); *United States v. Rogers*, No. 10-cr-20235, 2011 WL 2746196 (E.D. Mich. July 14, 2011) (denying defendant's motion for reconsideration of the court's order denying motion for revocation of detention order, relying on pre-2021 standard set forth in LR 7.1); *United States v. Broadnax*, No. 2:19-cr-20352, 2021 U.S. Dist. LEXIS 110648, at *3-4 (E.D. Mich. June 14, 2021) (citing the pre-2021 standard for LR 7.1(h) but relying on 18 U.S.C. § 3142(g) to deny the defendant's motion for reconsideration of the Court's decision to revoke bond).  The government has been unable to find any such cases that date to after this 2021 amendment.  It seems likely that this lack of cases is because the current version of LR 7.1(h)(1) directs the party seeking reconsideration of a final order, such as a detention order, to file a motion under Federal Rule of Civil Procedure 59(e) or 60(b), and these Rules of Civil Procedure are ill-suited to criminal cases.

"[m]otions in criminal cases shall be filed in accordance with the procedures set forth in LR 7.1." E.D. Mich. LR 12.1(a). LR 7.1(h)(2), which TAYLOR cites as the basis for this motion, provides that motions for reconsideration of non-final orders may be bought "only" on the following grounds:

> (A) The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B) An intervening change in controlling law warrants a different outcome; or
>
> (C) New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2). The Rule further provides that "[m]otions for reconsideration of non-final orders are disfavored." *Id.*; *see also United States v. McIntosh*, No. 24-cr-20525, 2025 WL 1416995, at *1 (E.D. Mich. May 15, 2025). "A motion for reconsideration is not a vehicle to re-hash old arguments, or to proffer new arguments or evidence that the movant could have brought up earlier." *United States v. Rodgers*, No. 10-cr-20235, 2011 WL 1364055, at *1 (E.D. Mich. April 11, 2011) (citing *Sault St. Marie Tribe v. Engler*, 146 F.3d 367, 374 (6th Cir.

1998)); *see also United States v. Woodford*, No. 21-cr-20717, 2023 WL 361778, at *4 (E.D. Mich. Jan. 23, 2023) ("[M]otions for reconsideration are not the proper vehicle to relitigate issues previously considered.") (internal quotation omitted).  Indeed, "[a] motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *United States v. Janczewski*, No. 2:17-cr-20597-TGB, 2023 WL 5407329, at *1 (E.D. Mich. Aug 22, 2023) (quoting *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001)). "[M]ere dissatisfaction with a Court's ruling is an inappropriate and insufficient ground to support a motion for reconsideration." *Woodford*, 2023 WL 361778, at *4.

In this case, TAYLOR is attempting to do exactly what LR 7.1(h)(2) precludes—"re-hash old arguments" and "proffer new arguments or evidence that [he] could have brought up earlier." *Rodgers*, 2011 WL 1364055, at *1.  Under LR 7.1(h)(2), the Court should not reconsider the two previous decisions, by Magistrate Judge Kimberly Altman and this Court, to detain TAYLOR pending trial because TAYLOR is unable to show that the Court made a mistake in

its prior decision, that there was an intervening change in law that warrants a different outcome, or that new facts warrant a different outcome.[7]  E.D. Mich. LR 7.1(h)(2).

## 1.  The Court Did Not Make a Mistake

TAYLOR does not identify the mistake it believes the Court made in its analysis under the Bail Reform Act, whereby it found by clear and convincing evidence that there were no conditions or combinations of conditions that would "reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e); *see also* Tr. of Motion Hearing at 87, Doc. 62, *United States v. Taylor*, No. 2:25-cr-20560 (E.D. Mich. Oct. 21, 2025).  This is because the Court did not make a mistake when it affirmed the magistrate judge's detention order.

Prior to the October 21, 2025, hearing on TAYLOR's motion to revoke the magistrate judge's detention order, this Court was able to review the government's detention memorandum and TAYLOR's two briefs and listen to the detention hearing that occurred before

---

[7] TAYLOR's motion fails to make clear which of the bases provided by LR 7.1(h)(2) he relies upon to seek reconsideration of the detention order.  Thus, the government will examine all three bases.

Magistrate Judge Altman.  Tr. of Motion Hearing at 4, Doc. 62, *United States v. Taylor*, No. 2:25-cr-20560 (E.D. Mich. Oct. 21, 2025).  After extensive argument from both the government and the defense, and after testimony from defense witness Alexis Larimer, the Court agreed with the magistrate judge's order of detention and made a detailed record of its analysis under the Bail Reform Act.  *Id.* at 72-88.  Initially, the Court correctly found that the presumption of detention applies in this case and further found that TAYLOR met the burden of production.  *Id.* at 74.  The Court went on to consider the four factors set forth in 18 U.S.C. § 3142(g), correctly stating the applicable law and providing a thoughtful analysis of each factor.  *Id.* at 72-88.

First, the Court found the nature and circumstances of the charged offenses to be "extremely serious," involving eight named victims and charges of forced labor that occurred over more than a decade.  *Id.* at 75.  The Court noted that the grand jury found probable cause to indict TAYLOR on these charges.  *Id.* at 77.  The Court also found that examples of statements by TAYLOR, included in the government's memorandum, were "clearly intended, and the black-and-white interpretation of them is that they were coercive statements,

25

attempting to coerce people to raise funds at all hours." *Id.* at 77. The Court correctly concluded that the nature of the offenses weighed in favor of detention. *Id.* at 78.

Second, the Court considered the weight of the evidence against TAYLOR, specifically "the weight of the evidence with respect to the danger to the community and . . . risk of flight" and not "the weight of the evidence as to the case itself." *Id.* at 78. This is a correct statement of how a court in the Sixth Circuit approaches the second factor under the Bail Reform Act. *See United States v. Naser*, No. 24-2044, 2025 U.S. App. LEXIS 10008, at *5 (6th Cir. Apr. 25, 2025) ("The second factor goes to the weight of the evidence of dangerousness or risk of flight, not the weight of the evidence of the defendant's guilt.") (quotation omitted). The Court found that "the weight of the evidence regarding danger I think is quite significant[.]" Tr. of Motion Hearing at 80, Doc. 62, *United States v. Taylor*, No. 2:25-cr-20560 (E.D. Mich. Oct. 21, 2025). In support of this finding, the Court pointed to specific evidence such as messages sent by TAYLOR directing deprivation of food, sleep and shelter; the sexual exploitation of members of KOGGC/JMMI; the messages TAYLOR sent to members indicating "he would possibly

disclose those [sexual] images if they did not do what he wanted," and the physical violence TAYLOR and others inflicted on workers.  *Id.* at 80-83.

Third, the Court examined the history and characteristics of TAYLOR, including "the person's character, their physical and mental condition, their family ties, their employment, financial resources, length of residence in the community, community ties, these kinds of things."  *Id.* at 83.  The Court correctly found that, "the type of employment that Mr. Taylor's been involved in normally would be a positive thing. . . .  The problem, however, is that the government's evidence suggests that while on the outside . . . the organization may have appeared to be positive and legitimate[,] . . . [o]n the inside, however, the type of conduct that was going on involved forced labor."  *Id.* at 84.  The Court also considered that TAYLOR did not have a criminal record.

Finally, the Court carefully analyzed the "nature and seriousness of the danger to the community that would be posed by the defendant's release[,]" finding that this factor "tips in favor of detention as well."  *Id.* at 85.  The Court found that "the evidence that's been presented

here has strongly shown a pattern of abusive conduct, manipulative conduct, in some cases violent conduct and coercive conduct, and I don't see how there can be any conditions that would separate Mr. Taylor from the entity that engaged in all that kind of conduct and resulted in these charges." *Id.* at 85-86. The Court pointed to TAYLOR's "record of intimidation" of KOGGC/JMMI workers, his "record of intimidation regarding the women who were sending him [sexual] images and who he threatened with disclosure of those images," and the evidence of violence against KOGGC/JMMI workers. *Id.* at 86.

After a thorough and thoughtful analysis, the Court ultimately found "by clear and convincing evidence that there is no condition or combination of conditions that will adequately protect the community from the defendant" and denied the motion to revoke the detention order. *Id.* at 87. The Court's statements of the law under the Bail Reform Act, and its application of the law to the evidence presented by both the government and the defense, was entirely correct and reasonable. Thus, the Court did not make any mistake that, under LR 7.1(h)(2)(A), would justify the "disfavored" reconsideration of its order of detention. E.D. Mich. LR 7.1(h)(2).

### 2. The Government Is Unaware of Any Intervening Change in Controlling Law that Would Warrant a Different Outcome

The second ground for a motion for reconsideration under LR 7.1(h)(2) is an intervening change in controlling law that would warrant a different outcome. The government has been unable to find such an intervening change in the law surrounding the Bail Reform Act. Thus, LR 7.1(h)(2)(B) does not provide a basis for the Court to reconsider its order of detention in this case.

### 3. There Are No New Facts—That Could Not Have Been Discovered Before the Detention Hearings—That Warrant a Different Outcome

The third and final basis for the Court to reconsider an order under LR 7.1(h)(2) is the discovery of "new facts" that "could not have been discovered with reasonable diligence before the prior decision" and that "warrant a different outcome." E.D. Mich. L.R. 7.1(h)(2)(C). The government interprets this standard as largely overlapping with the standard for reopening a detention hearing under the Bail Reform Act, set forth in § 3142(f)(2)(B). Specifically, the government reads the LR 7.1(h)(2)(C) requirement that the "new facts . . . could not have been discovered with reasonable diligence before the prior decision" to be

largely equivalent to the requirement under § 3142(f)(2)(B) for the defendant to present "new information . . . that was not known to the defendant at the time of the original hearing." *See* E.D. Mich. LR 7.1(h)(2)(C); 18 U.S.C. § 3142(f)(2)(B).

Similarly, the government reads the LR 7.1(h)(2)(C) requirement that the "new facts" must "warrant a different outcome" to be largely equivalent to the requirement under § 3142(f)(2)(B) that the new information have "a material bearing on the issue [of] whether there are conditions of release that will reasonably assure' the defendant's appearance and the safety of any other person and the community." *See* E.D. Mich. LR 7.1(h)(2)(C); *Willis*, No. 24-cr-20187, 2025 WL 2700594, at *1 (E.D. Mich. Sept. 22, 2025) (quoting 18 U.S.C. § 3142(f)(2)(B)).

As discussed at length above in Section I.B, using the standard set forth in § 3142(f)(2)(B), the information that TAYLOR has presented in his motion is not new and it does not warrant a different outcome. Furthermore, LR 7.1(h)(2) specifically provides that motions for reconsideration "are disfavored." E.D. Mich. LR 7.1(h)(2). The law surrounding this Rule makes clear that it is not to be used to "relitigate issues previously considered," *Woodford*, 2023 WL 361778, at *4, or to

"proffer new arguments or evidence that the movant could have brought up earlier." *Rodgers*, 2011 WL 1364055, at *1. TAYLOR's "mere dissatisfaction" with this Court's order of detention is "inappropriate and insufficient ground to support" his motion for reconsideration. *Woodford*, 2023 WL 361778, at *4. Accordingly, LR 7.1(h)(2)(3) does not provide a basis for reconsideration of the Court's order of detention.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court deny TAYLOR's Motion to Reconsider Order of Detention.

Respectfully submitted,

Jerome F. Gorgon Jr.
United States Attorney

SARAH RESNICK COHEN
Assistant United States Attorney
Eastern District of Michigan
Homeland Security Unit
Human Trafficking Coordinator
211 W. Fort St., Ste. 2001
Detroit, MI  48226
313-226-9100
Sarah.cohen@usdoj.gov

MATTHEW R. GALEOTTI
Acting Assistant Attorney General
United States Department of Justice

Criminal Division

*s/Lindsey Roberson*
LINDSEY ROBERSON
Trial Attorney
Human Rights and Special Prosecutions Section
Criminal Section
U.S. Department of Justice
Lindsey.roberson2@usdoj.gov
202-353-5153

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 26, 2025, I electronically filed

the foregoing with the Clerk of the Court by using the CM/ECF system,

which will send a notice of electronic filing to all counsel of record.

> *s/Lindsey Roberson*
> LINDSEY ROBERSON
> Trial Attorney
> Human Rights and Special Prosecutions Section
> Criminal Section
> U.S. Department of Justice
> Lindsey.roberson2@usdoj.gov
> 202-353-5153