UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

UNITED STATES OF AMERICA,

           Plaintiff,

v.

DAVID E. TAYLOR,

           Defendant.

Criminal No. 25-20560

Hon. Terrence G. Berg

_____/

**REPLY BRIEF**

David E. Taylor is a 53-year-old man who was raised in a loving and educated middle class Christian family from Memphis, TN. His parents were married for more than 60 years and he was the 7th of 9 children. Over the last three decades, Mr. Taylor has founded and risen to the top of a non-denominational Christian church. Mr. Taylor's appeal and success is primarily based on his groundbreaking first novel, "Face-to-Face Appearances from Jesus, https://www.amazon.com/Face-Face-Appearances-Jesus, the promotion of his ministry, and his worldwide travels and recognition. See, e.g. Ex. A, Taylor's recognition as Honorary

1

Tourism Ambassador to the Nation of Israel, https://joshuamediaministries.org/honored-ambassador-israel.

Mr. Taylor also has an unblemished criminal record and no history of violence. He has lived his entire life in the U.S. and - as this court has previously noted - is not a risk of flight. He vehemently maintains his innocence to these charges and claims he was always reasonably exercising his First Amendment rights to freely practice his religion. U.S. Const. amend. I.

Pastor Taylor is being detained without bond based on an indictment, one lawyer's proffer, and a series of several years-old text messages. The harm or damage he is said to have caused is predominantly limited to alleged emotional/mental anguish endured by former longtime church members. The evidence will show that these 8 individuals are not victims at all, at least not by Mr. Taylor's or his Church's actions. Rather, they were adult members of Mr. Taylor's church, who joined and remained with the congregation entirely voluntarily.

The Government's 32-page response [ECF 69] suffers from the same infirmities as did the Government's original submissions: a complete lack

of any actual evidence - besides old text messages - to support its mischaracterizing proffers of Taylor's dangerousness. That "dangerousness" was, in essence, claims "he's a leading pastor" and "people will do what he says" or "he could threaten someone in the future." But this fails to meet the quantum of evidence required to show dangerousness, nor should a bare bones proffer and some texts meet the standard.  A trial court's "finding of dangerousness must be supported by clear and convincing evidence." *US v. Mandarakas*, 2024 U.S. Dist. LEXIS 97473,p. 13, 18 USC sec. 3142(f)(2)(B), citing *U.S. v. Hinton*, 113 F.App'x 76,77 (6th Cir. 2004)("The government **must prove dangerousness to any other person or the community by clear and convincing evidence**.")  The government has not made a clear and convincing evidentiary proffer here.

The Government's response also fails to challenge the uncontested fact that all its "victims" were able-bodied, English-speaking, U.S. Citizen, adult volunteers who freely chose to join, stay with and work on behalf of the Church**.** These claimed "victims" communicated with their families, some had part-time jobs, their own cars, or even commuted to the church from different locations and even other states. Church

members could - and did - come and go, leaving the Church of their own accord. There is no meaningful evidence of restraint, violence, threats, or punishment, only fear of spiritual harm.  This is not enough to show their labor was unlawfully compelled.[1]

According to the purported victims' statements only recently provided, each believed they were unable to leave the church for the exact same reason: fear of the wrath of God. Each purported "victim" predominantly admits they could have left; they could have stopped working and volunteering with the Church, but **they chose not to leave**.  They made this choice due to their subjective fear of the spiritual consequences. The government's original proffer admits as much.

To paraphrase Taylor's previous submission, if a church member fears the spiritual or religious consequences of becoming an apostate of the church, that harm is a natural consequence of the person's belief

---

[1] See generally, *Salem v. Mich.  State Univ.* 2021 U.S. Dist. LEXIS 70805, (2021)("…[T]here is a difference between harm that arises as a natural consequence of the employee's decision to cease work and harm that would not arise as a natural consequence but is intentionally inflicted or threatened by the employer if the victim refuses to continue working. A claim of forced labor typically involves the latter. Otherwise, it is difficult to say that the harm *compelled* the labor rather than motivated it because the loss of employment almost always results in some financial harm due to lost wages.")

structure. A fear of offending God is too ambiguous and subjective to constitute sufficient legal coercion under the forced labor laws.[2] The offense of forced labor requires that the defendant have obtained the victim's labor through force, the threat of force, physical restraint, threat of physical restraint, serious harm, threats of serious harm, or abuse or threatened abuse of law or legal process.  18 U.S.C. § 1589(a).  A belief that "the divinity will be angry" is not sufficient.

## I.      The Additional Evidence the Government Provided

The FBI 302's for "V1 through V8" is new evidence for this court to consider and it was provided to Mr. Taylor's counsel on December 1, 2025. What do the statements of these 8 former church members claimed as "victims" describe? A group of extremely religious people who sought out and embraced the spiritual refuge Pastor Taylor and his church provided. After many years, in some cases more than a decade, these "victims," chose to follow a different light, and so they left. Far from showing force

---

[2] *See* generally, *United States v. Bradley*, 390 F.3d. 145, 153 (1st. Cir. 2004)("To rely on some hidden or emotional flaw or weakness unknown to the employer [to determine if there was coercion] would raise serious problems - e.g. scienter. But...known objective conditions that would make the victim especially vulnerable to pressure (such as youth or immigration status) bear on whether the employee's labor was 'obtain[ed]' by forbidden means.").

or coercion to *labor* for the Church, the testimonies of V1 through V8 show that these individuals **agreed to the labor** because they believed it was in their best (spiritual) interest to remain members of the church, and that such inclusion was a necessary path to try and satisfy their powerful spiritual needs. While people of different, or no, faith might conclude that the alleged "victims" belief structure was flawed, this does not transform the belief into a criminal offense.

The Government claims that Mr. Taylor is seeking to make this court's bond determination into a mini-trial. This court should consider facts. It should consider actual evidence. A man, presumed innocent, with no priors, is being detained without bond based on arguments at a detention hearing, before any of the allegedly weighty evidence against him was even provided to him. Government counsel, who was aware of the actual evidence, gave impassioned arguments, a closing statement really, without providing specific facts, or any documentary evidence at all, save for texts, which are easily contradicted by other text messages and which can be and were taken out of context. Now that actual evidence has been provided, Mr. Taylor is entitled to raise it. Due process for him requires it. If the Government is fearful of this court evaluating

actual evidence, as opposed to its tenuous arguments, then it seems to be conceding the very point Mr. Taylor is making.

The simple truth is that this case is fatally old and fatally flawed, and it was previously investigated *ad nauseum* without charges being brought. Mr. Taylor and his church have been scrutinized by the FBI for a litany of supposed offenses since at least 2015. US Attorneys, local and state prosecutors in several states have looked at this potpourri of disaffected former church adherents for years. Not one initiated a criminal proceeding until this past summer. For good reason. It is meritless. Indeed, as **Mr. Taylor can now show, some of the alleged "victims" named in individual counts freely disassociated themself from the Church before July 23, 2019, more than six (6) years before this case was charged**. See, 18 USC sec. 3282(a).[3]

The Government did not present this court with actual facts at the two quick succession detention hearings, only misleading argument. The Government finally produced their "victims" 302's two days ago and they

---

[3]"Except as otherwise provided by law, no person shall be prosecuted, tried or punished for any offense, not capital, unless the indictment is found on the information is instituted **within five years** next after such offense shall have been committed." (Underline, boldness added.)

do not support the arguments made during its proffers. Existing case law, the local court rules, and the interests of justice favor this court's reconsideration of Mr. Taylor's detention without bond, and this court should hold a hearing where it can properly weigh the newly discovered evidence considering the factors in *18 U.S.C. § 3142(g)*.

## II.    Local Rule 7.1(h) permits this court to reconsider its Detention Order as a matter of discretion.

In *United States v. Johnson*, 2022 U.S. App. LEXIS 360, 2022 WL 35406 (2022), attached, the Sixth Circuit recognized that Motions for Reconsideration, remain a viable tool for trial courts to modify their previous non-final orders under certain circumstances, wherein it states that:

> "Motions to reconsider do not exist in the Federal Rules of Criminal Procedure **but are not uncommon**. See, e.g., *United States v. Ibarra, 502 U.S. 1, 5-7, 112 S. Ct. 4, 116 L. Ed. 2d 1 (1991)* (per curiam). To the extent we review motions to reconsider in criminal cases, **we rely on analogous precedent arising under the Federal Rules of Civil Procedure**." *United States v. LaDeau, 734 F.3d 561, 572 n.3 (6th Cir. 2013)*. Such motions to reconsider are reviewed for abuse of discretion. *United States v. Lawrence, 308 F.3d 623, 627 (6th Cir. 2002)*. A motion for reconsideration may be granted when there has been "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. V. Henderson, 428 F.3d 605, 620 (6th Cir. 2005)*." Id. (boldness added.)

8

Indeed, the circumstances in *Johnson* are not that dissimilar to the instant action.  In this case defendant seeks to reopen the detention hearing due to 1) the existence of new evidence and 2) the court's reliance on a mistaken government factual proffer leading to an error of law relative to the weight of the evidence and the claims of dangerousness.  In *Johnson* the trial court reconsidered its previous ruling on a motion to suppress based on its mistaken understanding of a disputed issue of fact. In upholding this ground as a proper basis to reopen the Sixth Circuit reasoned:

> "We are, however, not left with "a definite and firm conviction that the trial court committed a clear error of judgment" by granting this motion to reconsider. *United States v. Isaiah, 434 F.3d 513, 519 (6th Cir. 2006)* (quoting *United States v. True, 250 F.3d 410, 422 n.9 (6th Cir. 2001)*. The district court explained that in its initial legal determination, it had relied, at least in part, on the government's colloquy with Detective Irwin at the suppression hearing. In that colloquy, the court asked him whether a person was seized when the police activated their lights. Thereby the court mistakenly determined that the time of seizure was not a disputed issue. **In doing so, it corrected its own error. It did not abuse its discretion in doing so**." Id. (boldness added.)

Additionally, the absence of any original compelling evidence, combined with the new evidence permits this court to reconsider its non-final detention order under both subsections (1) and (2), as identified in *Johnson,* Id. and *Intera Corp. v. Henderson*, 428 F.3d. 620.

Moreover, "the need to prevent a manifest injustice," see subsection (4) under *Henderson* Id., is yet another ground for this court to reconsider its previous detention order.

### III. The new evidence warranting reconsideration could not have been discovered prior to the previous Detention Hearings.

The new evidence, not available to Defendant or his lawyers at the original detention hearings, were the 302's and other evidence the Government's proffer purportedly relied upon. As of this writing, the Government continues to release discovery, on a "rolling basis," and the evidence it has produced thus far does not support the Government's conclusory proffers in any way. Moreover, contrary to the Government's claims, Defendant Taylor was not in possession of the text message evidence. He has been in custody since late August 2025 and had no personal access to these text messages. When his lawyer obtained these texts, Defendant acted in a timely fashion and made the Court aware of the existence of a wealth of text messages which directly contradicts the government's proffer claims.  At the time of the detention hearing, the time of the filing of the Motion to Reconsider, and at the time of the filing of the Government response, the Government had still not disclosed any

full statement (302's) of any identified victim. The Government chose to and continues to make its proffers in darkness (or via selected texts), to thwart defense discovery of this necessary *Brady* information, all to continue this unlawful detention of Mr. Taylor.

Notwithstanding the difficulty in obtaining text message evidence while Mr. Taylor was in custody, the "new evidence" to reconsider the detention order, see LR 7.1 (h)(2)(C), has slowly come to light. This new evidence continues to arrive with every slow-walked discovery submission and provides additional new evidence for this court to consider when it reviews a government proffer that was full of emotion and conclusory allegations, but empty of specific facts, police reports, photos, or audio/video recordings. Finally, this 'new evidence' is exclusively possessed and (now, only partially) released to Defendant by the government, *most recently on 12/1*, so there can be no claim that Defendant could have raised these new facts at either detention hearing. Id.

### IV. The Court should reconsider its Detention Order to prevent a manifest injustice.

Based on the evidence produced, it is a great injustice to continue to detain Mr. Taylor without bond.  Defendant has now been provided

statements from all the alleged victims, and none of them are compelling or very supportive of the Government's cause.  In support of defendant's proffer in this respect, expects of each supposed victim's statement is attached as an Exhibit and filed under seal, per this Court's Protective Order [ECF 22].

Moreover, since some of the individual victims left the church more than six years before being indicted, it is patently unfair to be charged when the limitations period had expired at the time of presentment to a grand jury.

Under the Bail Reform Act there are four factors a court must consider when deciding release decisions. *18 U.S.C. § 3142(g)*. First is "the nature and circumstances of the offense charged." *Id. §3142(g)(1)*. The second and third are "the weight of the evidence against the person" and the individual's "history and characteristics[.]" *Id. § 3142(g)(2)-(3)*.  A finding of dangerousness must be "supported by clear and convincing evidence." *18 U.S.C. §3142(f)(2)(B)*; see also *United States v. Hinton, 113 F. App'x 76, 77 (6ᵗʰ Cir. 2004)*. ("The government…must prove dangerousness to any other person or the community **by clear and convincing evidence**.")(Boldness added.)

This court should reconsider its order of detention and grant Mr. Taylor a reasonable bond, with conditions. He is innocent and looking forward to vindicating himself in court. He is no danger to anyone in the community and this court erred when it relied on a mischaracterized Government proffer.

/s/ Laurence H. Margolis
Laurence H. Margolis
(P69635)

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **REPLY BRIEF** upon all attorneys of record for this matter via the Case Management/Electronic Case Files (CM/ECF) system for the UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN.

/s/ Laurence H. Margolis