UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Criminal No. 2:25-cr-20560
Hon. Susan K. DeClercq

D-1 DAVID TAYLOR,
D-2 MICHELLE BRANNON,
D-3 KATHLEEN KLEIN,

Defendants.
_________________________________/

**DEFENDANTS' JOINT MOTION TO STRIKE SURPLUSAGE**

NOW COME PASTOR DAVID TAYLOR, MICHELLE BRANNON, and KATHLEEN KLEIN, through their respective counsel, and move this Honorable Court, pursuant to the provisions of Rule 7(d), for the entry of an Order striking the last portion of Paragraph 18 and Paragraphs 35-40 of Count One of the Second Superseding Indictment as surplusage, and in support of said motion say as follows:

1. They are the defendants in the above-captioned cause, charged with Conspiracy to Commit Forced Labor, in alleged violation of 18 U.S.C. § 1594(a), Forced Labor, in alleged violation of 18 U.S.C. § 1589, and Money Laundering Conspiracy, in alleged violation of 18 U.S.C. § 1956(h), arising out of the defendants' leadership of the Kingdom of God Global Church.

2. The focus of the charges, as the Court has characterized them, was the operation of telephone call centers:

> Defendant David Taylor is the leader of the Kingdom of God Global Church (KOGGC). *See* ECF No. 91 at PageID.958. The Government alleges that Taylor, as KOGGC's leader, operated "organized call centers" in Michigan, Missouri, Florida, and Texas. *Id.* at PageID.959. According to the Government, Taylor recruited people "from across the country to work as phone solicitors" at these call centers to solicit money "from donors, purportedly to support the operations and ministry of KOGGC." *Id.*
>
> But—the Government alleges—Taylor and KOGGC did not pay these phone solicitors for their work. *See id.* at PageID.959. Instead, the Government alleges that Taylor used force, threats of force, physical restraint, and threats of physical restraint to keep the phone solicitors working. *Id.* at PageID.977.

R.E. 196, Order Denying Motion for Discovery, PageID.2506-2507.

3. Although not alleged in the original Indictment, Paragraphs 14 and 53 of the Conspiracy to Commit Forced Labor count of the First Superseding Indictment added the allegation that "TAYLOR frequently requested and received sexually explicit photographs and videos from female KOGGC/JMMI victims."

4. Paragraph 18 of Count One of the Second Superseding Indictment, charging Conspiracy to Commit Forced Labor, repeats (and amplifies) that allegation: "TAYLOR also directed dozens of female laborers to perform sex acts and take sexually explicit pictures and videos."

5. Paragraph 39 of Count One of the Second Superseding Indictment states, "TAYLOR also shared explicit images he received with BRANNON, other female laborers, and other members of KOGGC. TAYLOR then used the sexually explicit images to control and exploit female laborers."

6. In addition, Paragraphs 35-40 (spanning pages 19 through 38) of that Count repeat those allegations, and recite the contents of alleged communications attributed to Pastor Taylor which the government apparently believes evidences that behavior, in striking, explicit, and often vulgar or salacious language.

7. Because these allegations are not necessary to the definition and allegation of the offense charged in Count 1, they are surplusage.

8. Rule 7(d), Fed. R. Crim. P., provides that "The court on motion of the defendant may strike surplusage from the indictment or information."

9. Rule 7(d)'s purpose is to protect defendants against the effect on their fair-trial rights of allegations in an indictment which are inflammatory or prejudicial.

10. As explained more fully in the memorandum filed in support of this motion, the inclusion of the allegations in the above-listed paragraphs of Count One of the Second Superseding Indictment is unfairly prejudicial to the defendants, and should therefore be stricken.

11. Counsel for the defendants have sought the concurrence of government counsel in the relief here sought. Concurrence was denied.

WHEREFORE, defendants respectfully pray that this Honorable Court enter an Order striking the last portion of Paragraph 18 and Paragraphs 35 through 40 of Count One of the Second Superseding Indictment as surplusage.

Respectfully submitted,

*/s/ Allison L. Kriger*
**Allison L. Kriger**
LaRene & Kriger, P.L.C.
500 Griswold St., Suite 2400
Detroit, MI 48226
313-967-0100
akriger@larenekriger.com

**Todd Russell Perkins**
615 Griswold, Suite 400
Detroit, MI 48226
313-964-1702
tperkins@perkinslawgroup.net

**Laurence H. Margolis**
Margolis Law Firm
214 South Main Street, Suite 202
Ann Arbor, MI 48104
734-994-9590
larry@lawinannarbor.com

**Andrew T. George**
Bourelly, George, and Brodey PLLC
1050 30th St. NW
Washington, DC 20007
202-753-5012
andrew.george@bgblawyers.com

**J. Alex Little**
**Brent Adams Hannafan**
**Zachary C. Lawson**
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
615-985-8205
alex@litson.co
brent@litson.co
zack@litson.co

*Counsel for D-1 David Taylor*

*s/ George B. Donnini w/consent*
**George B. Donnini**
**Joseph E. Richotte**
Counsel for D-2 Michelle Brannon
Butzel Long
201 W. Big Beaver, Suite 1200
Troy, MI 48084
donnini@butzel.com
richotte@butzel.com

*s/ R. Michael Bullotta w/consent*
**R. Michael Bullotta**
Counsel for D-3 Kathleen Klein
Bullotta Law PLLC
615 Griswold Street, Suite 1620
Detroit, MI 48226
michael@bullottalaw.com

DATED: October 8, 2026

UNITED STATES OF AMERICA
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

Criminal No. 2:25-cr-20560
Hon. Susan K. DeClercq

D-1 DAVID TAYLOR,
D-2 MICHELLE BRANNON,
D-3 KATHLEEN KLEIN,

Defendants.
_______________________________________/

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' JOINT MOTION TO STRIKE SURPLUSAGE

**Issues presented:**

Whether "sext messages" added in the Second Superseding Indictment should be stricken as inflammatory surplusage.

**Principal authorities:** Rule 7(d), Fed. R. Crim. P.

## INTRODUCTION

The defendants have been charged with conspiring to commit forced labor and money laundering, allegedly in service of a fundraising operation. These were the charges in the first and second indictments in this case, and they are still the charges. On July 30, 2026, the government unsealed a second superseding indictment ("SSI") against Pastor David Taylor, Michelle Brannon, and Kathleen

Klein. It added no new charges and no new defendants. Instead, it added salacious, personal messages attributed to Pastor Taylor and, at times, Michelle Brannon, but not Kathleen Klein. They are entirely gratuitous, irrelevant to the elements of the forced labor and money laundering charges at issue, useful only to smear Pastor Taylor's, Ms. Brannon's, and, by association, Ms. Klein's character, and should be stricken as inflammatory surplusage.

But the Court need not take our word for it. Attached to this motion are sworn declarations from the first two supposed victims (F-1 and F-2) whose personal messages were broadcast to the world in this superseding indictment without either of their consent or knowledge.[1] We obtained these declarations despite the government refusing to provide defense counsel with these women's identities. Indeed, F-2 came to us. She is a *former* full-time minister who does not live with the Church. She is not in any way controlled by the Church. She picked up the

[1] The communications discussing F-3 and F-4 are different, though equally irrelevant to the crimes charged. The purported threats to disseminate F-3's and F-4's sexually explicit images are discussed in Pastor Taylor's Renewed Motion to Reopen the Detention Hearing or for a Bond Redetermination Hearing and for Expedited Hearing. ECF No. 230. Neither F-3 nor F-4 were ever live-in or full-time church participants, nor were they still associated with the Church when these messages were sent. And one of the women was paid for her work. They, therefore, have nothing to do with the forced labor or money laundering charges here.

phone and reached out on her own initiative to defense counsel. Why? Because she'd seen a Facebook post about the SSI after a friend asked whether it was about her, and she felt exploited.

We are providing these declarations not to contest the truth of the government's allegations—although we do—but to show that the challenged paragraphs serve no legitimate charging purpose and inflict concrete prejudice not only on the defendants but also on the women the government claims to be protecting. They are unsparing, and we urge the Court to read them in full. Both F-1 and F-2 report that the messages added in the SSI are highly personal communications between consenting adults and have nothing to do with their work with the Church. Both were horrified and embarrassed to see their messages publicized in this way, without their consent, and with context clues that allow them to be easily identified by those in their community. And both were furious at being called "laborers" and victims, when they are neither. They don't want the government's help. They want to be left alone. Their messages have nothing to do with forced labor or money laundering and have no proper place in this case.

Rule 7(d) was made for allegations like these. This Court should strike these irrelevant, inflammatory allegations from the Second Superseding Indictment.

## RELEVANT FACTS AND PROCEDURAL HISTORY

The grand jury returned the original indictment on July 23, 2025. It was unsealed on August 27, 2025. As the Court described it, the core of the case concerned telephone call centers staffed by unpaid workers who allegedly were recruited and forced to solicit donations:

> According to the Government, Taylor recruited people "from across the country to work as phone solicitors" at these call centers to solicit money "from donors, purportedly to support the operations and ministry of KOGGC." *Id.*
>
> But—the Government alleges—Taylor and KOGGC did not pay those phone solicitors for their work. *See id.* at PageID.959. On the contrary, the Government alleges that Taylor used force, threats of force, physical restraint, and threats of physical restraint to keep the phone solicitors working. *Id.* at PageID.977.

R.E. 196, Order Denying Motion for Discovery, PageID.2506–2507.

The original indictment contained only one reference to Pastor Taylor's personal life. Paragraph 11 alleged, in pertinent part, that "TAYLOR demanded that his 'armor bearers' . . . transport women from ministry houses, airports, and other locations to TAYLOR's location, and ensure the women transported to TAYLOR took Plan B emergency contraceptives." Indictment, ECF No. 1, ¶ 11 (now the last part of Paragraph 10 of the Second Superseding Indictment).

The government superseded on February 11, 2026. The charges remained

the same, but the government added one defendant, Kathleen Klein, as well as allegations concerning Pastor Taylor's personal life: "TAYLOR frequently requested and received sexually explicit photographs and videos from female KOGGC/JMMI victims." First SSI, ECF No. 91, ¶¶ 14, 53.

On July 30, 2026, the government superseded again. This time, it expanded on the allegations in Paragraphs 14 and 53 of the First SSI. Paragraph 18 of Count One of the SSI, which charges Conspiracy to Commit Forced Labor, asserts that "TAYLOR also directed dozens of female laborers to perform sex acts and take sexually explicit pictures and videos." Paragraph 39 similarly alleges, "TAYLOR also shared explicit images he received with BRANNON, other female laborers, and other members of KOGGC. TAYLOR then used the sexually explicit images to control and exploit female laborers." The government alleges these "other female laborers" were subjected to forced labor, in addition to Victims 1-8 identified in the SSI. Gov't Opp'n Return Prop., ECF No. 233, at 12. Paragraphs 35 through 40 of Count One then publicize 19 pages' worth of private text communications between four women—F-1, F-2, F-3, and F-4—and Pastor Taylor.

Two of these women's declarations are below.

**<u>Declaration of F-1</u>:**

F-1 is an adult woman, who has been a full-time minister for approximately eight years. Exh. A, Decl. of F-1, ¶¶ 1, 3. This was her choice. She "made the decision to join the ministry full-time . . . No one pressured her." *Id.* at ¶ 7. "In fact," she explained, "one [redacted] decided not to become a full-time minister and [redacted]" *Id.* Despite the government's claims that people cannot leave the ministry, F-1 averred that Pastor Taylor [redacted]" *Id.*

Although F-1 could have gone to [redacted], she "stayed at the ministry, but not because anyone forced [her] to"; she did it "because [she] believe[s] in the Bible and [she] love[s] serving God. Being here is [her] choice, and if [she] didn't like it here, [she'd] leave." *Id.*

While staying at the ministry was and remains her choice, being inserted into this prosecution was not. She describes as "horrifying" the experience of learning that the government read and shared *seven pages* of her private messages for all to read without warning:

> Seeing these texts in a public government document was horrifying. These are profoundly personal communications from when I was a full-grown, consenting adult. They were never meant to be shared and no one ever warned me that the government planned to do this. It's great to use a code-name for me, but it's not especially hard for members of our community to figure out who I am from context clues.

*Id*. at ¶ 5.

The government's use of the messages put F-1 in a difficult position, because "there's a lot of context missing, and I don't see why I should have to share it—this is my personal life and it has nothing to do with this case." *Id*. at ¶ 6. As she put it,

> Aren't the defendants in this case charged with forced labor? Where do any of these texts say anything about forced labor? Or about labor at all? I can tell you as the person who received these messages, they had no effect on my work with the ministry. They did not influence my participation in the ministry in any way. These texts are about a personal relationship between consenting adults.

*Id*. (emphases in original). "I am not a victim, I can handle my own affairs, and I wish the government would just leave me and my family alone." *Id.*

This was what she had told the government when agents interviewed her on [redacted] 2026, at [redacted], not ministry housing—away from the influence of other KOGGC ministers or congregants. She told the agents "she is a consenting adult and not a 'victim.'" FBI FD-302, Interview of F-1, [redacted]26. The government apparently knew better, and featured her private messages in the SSI.

**Declaration of F-2:**

F-2 was interviewed on October 10, 2025. Importantly, she told the agents she "lives in [redacted] and has not been to a KOGGC facility in at least six

months." Exh. B, FBI FD-302, Interview of F-2. Meaning, she was at this point "free" from her supposed captivity and forced labor and was in no way controlled by the defendants. She told the government *then* she "believes the entire investigation is funny and is a lie." She said, "there is nothing about her personal relationship with Taylor that would indicate 'grooming' behavior while she was underage." "She said she is 'not a victim at all.'" She said, "her time with KOGGC has been great and she is happy."

Again, the government knew better. Apparently unpersuaded by what F-2 had to say, the government unilaterally published *eight pages* of her private text messages—all sent while she was an adult—into the SSI.[2] *See* SSI ¶ 37. The government did not consult with her before doing this. Exh. B, Decl. of F-2, ¶ 14. The messages are salacious and embarrassing and say nothing whatsoever about forced labor or fundraising.

In her declaration, F-2 describes being contacted by FBI Special Agent Erica Kelley on August 4, 2026, who told her *after* the Second Superseding Indictment was unsealed that details about her personal life were included. Exh. B, Decl. of F-

[2] This raises questions about what the grand jury was told regarding F-1's and F-2's interviews, which will be for another day and motion.

2, ¶ 14. After reading the allegations, F-2 further attests, she felt "the government victimized [her] by placing [her] private messages out into the world without [her] consent." *Id*. It was "humiliating and unnecessary"; in F-2's view, her private messages "don't have anything to do with forced labor." *Id*. at ¶ 15. F-2 contacted Pastor Taylor's counsel "to set the true narrative straight."[3] *Id*. at ¶¶ 13, 14.

F-2 is emphatic on several points: she was not groomed; she was not victimized by Pastor Taylor, as a woman or as a staff member; her time in ministry was voluntary; she never feared that Pastor Taylor would share her private messages; and the government had no right to invade her privacy without her consent or ignore her account of the circumstances surrounding the text messages and her relationship with Pastor Taylor and the ministry. And, critical to this motion, she says the messages have nothing to do with any work she did for the ministry.

Ultimately, F-2 believes that the government "does not understand the ministry, and it doesn't seem like they want to. If they did, they could have asked me directly and listen[ed] to my answers, and taken them into consideration. But they didn't." *Id*. at ¶ 16.

[3] Notably, before F-2 proactively contacted Attorney Allison Kriger, no one from any of the defense teams had ever spoken with or attempted to contact F-2.

## LAW AND ARGUMENT

The allegations at issue are inflammatory surplusage and should be stricken.

Federal Rule of Criminal Procedure 7(c)(1) provides, in pertinent part: "The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged and must be signed by an attorney for the government." Rule 7(d) adds, "The court on motion of the defendant may strike surplusage from the indictment or information." "The Rule is properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). It is addressed "to the sound discretion of the district court." *Id.*

In this Circuit, Rule 7(d) applies "only where it is clear that the language is irrelevant and prejudicial." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993).[4] Still, "Supreme Court precedent has consistently held that excess allegations in an indictment that do not change the basic nature of the offense charged need not be

[4] But, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *Moss*, 9 F.3d at 550.

proven and should be treated as mere surplusage." *United States v. Pumphrey*, 831 F.2d 307, 309 (D.C. Cir. 1987) (citing cases).

**First**, starting with relevancy, the offending portions are found at Paragraphs 18 and 35-40 of the SSI. Paragraphs 18 and 39 allege that Pastor Taylor "directed dozens of female laborers to perform sex acts and take sexually explicit pictures and videos," and then used the explicit images to control the "female laborers." Paragraphs 35-40 then lay out 19 pages' worth of sexually charged messages between Pastor Taylor and individuals labeled as F-1 through F-4, whom the government has refused to identify to defense counsel. These portions are entirely gratuitous. They bear no nexus to the alleged forced-labor scheme—*i.e.*, call centers staffed with unpaid workers forced to solicit donations or suffer harm—or to the alleged proceeds of that scheme underlying the money-laundering charge. They do not alter or broaden the charged offenses. Ultimately, because their inclusion is not necessary "for any future conviction to stand," they are irrelevant. *United States v. Hedgepeth*, 434 F.3d 609, 612 (3d Cir. 2006).

**Second**, as to prejudice, these portions are wildly prejudicial. It is difficult to imagine allegations more likely to impair a jury's fair-minded consideration of the charges than the explicit, salacious, and vulgar language of the contextless

communications as depicted by the government in lengthy detail in Paragraphs 35-40. Presenting those allegations to the jury in a solemnly returned charging document would imperil the defendants' fair-trial rights and warrants the exercise of the Court's discretion under Rule 7(d).

*United States v. Schofield*, No. CRIM 06-CR-427 JCC, 2006 WL 3408101, at *3 (E.D. Va. Nov. 22, 2006), is instructive. There, the defendant, a 30-year federal employee with the Office of Customs and Immigration, was charged with conspiracy to commit immigration fraud, bribery of a public official, fraud and misuse of immigration documents, conspiracy to encourage unlawful entry and residence, encouraging unlawful entry and residence, and unlawful procurement of citizenship and naturalization. The indictment included details of the defendant's alleged sexual conduct in the Philippines and Thailand, as well as references to a handwritten journal and photographs of the defendant with numerous females.

The defendant moved to strike both the sexual-conduct allegations and the references to the handwritten journal and photographs. Although the matter was set for a bench trial, the court granted the request, reasoning:

> Defendant was charged with no child pornography or sex crimes … The language regarding Defendant's sexual activity in Asia is thus not essential to any of the charges against him. The arguments presented by the Government against striking the language as surplusage relate to the

> ultimate admissibility of evidence supporting the allegations in Paragraph 8, but offer no explanation as to why the language was necessary in the indictment.
>
> Striking the language from the indictment would have no effect on the Government's ability to admit related evidence as proof of motive or connection to Southeast Asia, and would thus not prejudice the Government. Furthermore, while the danger of unfair prejudice and confusion is somewhat alleviated, as the matter will be heard for a bench trial rather than a jury trial, it still exists. The Government has shown no legitimate purpose for including the language regarding Defendant's sexual activity in Southeast Asia in the indictment. Accordingly, Paragraph 8 will be stricken from the indictment as surplusage.

*Id*. at *3.

Just so here. The defendants have been charged with no sex crimes. And the SSI does not attempt to draw a connection between the sexually explicit materials at issue and forced labor for fundraising. Paragraphs 35 through 40 do not supply the missing link: the communications reproduced there concern personal relationships between consenting adults, not call-center shifts, solicitation quotas, donations, or any other labor the government contends was compelled. The language within these sexually charged text messages is, therefore, not essential to any of the government's charges. And striking the messages would not prejudice the government. But more than that, here there *will* be a jury trial.

Striking the challenged language is also warranted because it constitutes

other-acts evidence that could lead the jury to believe the defendants committed—or are at least accused of committing—crimes not charged in the indictment. *See, e.g., United States v. Xiong*, No. 07-CR-112, 2007 WL 2703859, at *9 (E.D. Wis. Sept. 14, 2007), *report and recommendation adopted*, No. 07-CR-112, 2007 WL 4206640 (E.D. Wis. Nov. 26, 2007). In *Xiong*, a prosecution for conspiracy to commit arson and mail fraud, the court struck as irrelevant, inflammatory, and prejudicial surplusage allegations suggesting that the defendant committed benefits fraud. The court opined that those allegations were "not clearly related to the conspiracy to commit arson and mail fraud charged in Count One," were not "material to the charged offense," and related instead "to other potential charges." *Id.* at *11. Simply put, the court concluded that the allegations functioned as other-acts evidence that could lead the jury to believe "that the defendants are accused of crimes not charged in the indictment," and that their admissibility at trial would depend on whether the government satisfied Rule 404(b).

The district court reached the same result in *United States v. Trump*, 736 F. Supp. 3d 1206, 1217–18 (S.D. Fla. 2024). There, the grand jury returned a "speaking indictment" against a former president for Willful Retention of National Defense Information; Conspiracy to Obstruct Justice; Withholding a Document or

Record, Corruptly Sealing a Document or Record; Concealing a Document in a Federal Investigation; Scheme to Conceal; False Statements and Representations; Altering, Destroying, Mutilating, or Concealing an Object, Altering, Destroying, Mutilating, or Concealing a Document, Record, or Other Object. The court struck as inflammatory surplusage a paragraph alleging uncharged other-acts evidence (*i.e.,* that the defendant disclosed classified information to another person lacking the necessary security clearance). In so striking, the court "note[d] the risks that can flow from a prosecutor's decision to include in a charging document an extensive narrative account of his or her view of the facts, especially in cases of significant public interest," and concluded the inclusion of "substantive Rule 404(b) allegations" in the indictment "is not appropriate." *Id*. at 1217. Such evidence must be subject to "litigation in the normal course," in advance of trial, "when the [c]ourt can assess the potential probative value and/or prejudicial impact of such evidence in light of the full evidentiary picture." *Id*. at 1217-18.

Here, as in *Schofield*, *Xiong*, and *Trump*, the explicit, salacious, and vulgar language of the alleged communications is inflammatory, prejudicial, and untethered to the charged forced-labor and money-laundering offenses. Not one current or former live-in minister has reported he or she was motivated to provide labor to the

ministry by a fear that Pastor Taylor or the Church would disclose sexually explicit material. On the contrary, the government specifically concedes in the Second Superseding Indictment that the sexually explicit material was used as punishment *to those who spoke out against KOGGC* rather than as motivation or punishment to those who failed to provide labor to the Church. Thus, to the extent the government intends to seek admission of this evidence at trial, it must do so through the ordinary evidentiary process. Its inclusion in the indictment serves no legitimate charging function and creates a grave risk of unfair prejudice before the evidence has been tested for admissibility.

The public reporting that followed the Second Superseding Indictment illustrates the point. A Detroit News article described the new indictment as portraying Pastor Taylor as "a money-hungry amateur pornographer who directed dozens of female church workers—including teenagers—to perform sex acts and send custom-ordered nudes."[5] The headline said it all:

---

[5] https://www.detroitnews.com/story/news/local/wayne-county/2026/08/07/nudes-and-sex-dominate-kingdom-of-god-labor-case-with-david-taylor/91127053007/

## Nudes and sex dominate Kingdom of God church case with David Taylor



Robert Snell
The Detroit News

Updated Aug. 7, 2026, 11:09 a.m. ET

They do indeed. At least, they dominate the SSI—which, again, charges forced labor and money laundering, not any sex offenses.

### CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court strike the last portion of Paragraph 18 and Paragraphs 35 through 40 of Count One of the SSI as surplusage. Those allegations are unnecessary to the charged offenses, inflammatory and extremely prejudicial, and, in this widely publicized prosecution, risk inviting the court of public opinion and the jury to decide the case based on uncharged and sensationalized conduct rather than the elements the government must prove. Striking them will preserve the integrity of the charging document, protect the defendants' fair-trial rights, and leave the government free to litigate evidentiary issues through the ordinary course.

Respectfully submitted,

*/s/ Allison L. Kriger*
**Allison L. Kriger**
LaRene & Kriger, P.L.C.
500 Griswold St., Suite 2400
Detroit, MI 48226
313-967-0100
akriger@larenekriger.com

**Todd Russell Perkins**
615 Griswold
Suite 400
Detroit, MI 48226
313-964-1702
tperkins@perkinslawgroup.net

**Laurence H. Margolis**
Margolis Law Firm
214 South Main Street, Suite 202
Ann Arbor, MI 48104
734-994-9590
larry@lawinannarbor.com

**Andrew T. George**
Bourelly, George, and Brodey PLLC
1050 30th St. NW
Washington, DC 20007
202-753-5012
andrew.george@bgblawyers.com

**J. Alex Little**
**Brent Adams Hannafan**
**Zachary C. Lawson**
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203
615-985-8205
alex@litson.co
brent@litson.co
zack@litson.co

*Counsel for D-1 David Taylor*

*s/ George B. Donnini w/consent*
**George B. Donnini**
**Joseph E. Richotte**
*Counsel for D-2 Michelle Brannon*
Butzel Long
201 W. Big Beaver, Suite 1200
Troy, MI 48084
donnini@butzel.com
richotte@butzel.com

*s/ R. Michael Bullotta w/consent*
**R. Michael Bullotta**
*Counsel for D-3 Kathleen Klein*
Bullotta Law PLLC
615 Griswold Street, Suite 1620
Detroit, MI 48226
michael@bullottalaw.com

DATED: October 8, 2026