UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

v.

CASE NO. 25-20560

HON. SUSAN K. DeCLERCQ

D-1 DAVID TAYLOR,
D-2 MICHELLE BRANNON, and
D-3 KATHLEEN KLEIN,

Defendants.

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO STRIKE SURPLUSAGE (ECF No. 272)**

The defendants seek to strike as "surplusage" the allegations in the Second Superseding Indictment regarding the sexual services that women were compelled to provide to Taylor. Taylor, Brannon, and Klein assert that these allegations are irrelevant and unduly prejudicial under Federal Rule of Criminal Procedure 7(d) and inserted merely to prejudice the defendants and for no other purpose. A simple reading of the Second Superseding Indictment, however, clearly demonstrates that the allegations of coerced sexual services are part of the forced labor charged in the indictment and thus not surplusage under Rule 7(d). Accordingly, the motion must be denied.

# I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The Second Superseding Indictment details the myriad of ways in which the defendants conspired to compel unpaid labor from certain victims and other laborers at the Kingdom of God Global Church (KOGGC)(f/k/a JMMI). The charged forced labor includes forcing victims to work in call centers, act as armor bearers for Taylor, perform sex acts for Taylor, and take sexually explicit pictures and videos for Taylor. (ECF No. 194, ¶¶ 16–19, PageID.2461–62).

Regarding the third and fourth type of forced labor (collectively referred to as sexual services), the indictment specifically alleges and includes examples of the defendants compelling women to take sexually explicit images and send them to Taylor. *See* ECF No. 194, ¶¶ 18, 35-40, PageID2461, 2476-2495. To obtain the sexual services of women, Taylor, *inter alia*, sent a voluminous number of texts to dozens of women directing them to send him sexually explicit images; he made space for them to perform sexually for him in the mansions he purchased with money from his forced labor scheme; and he arranged for them to have time off from their unpaid labor in the call centers so they would be available for his sexual commands. When they refused, resisted, or delayed, Taylor frequently relied upon Brannon (Taylor's enforcer of much of his forced labor) to make them comply. Directly or through Brannon, Taylor threatened the women with reputational harm, spiritual damnation, or being "kicked out" of KOGGC. (ECF No. 194, ¶¶ 35–40,

PageID.2476–95).[1] Taylor saved these graphic videos and images for his gratification. He also shared them with Brannon, his armor bearers, and others. Taylor and Brannon also used the sexual material to extort women into silence and further submission.

The language the defendants characterize as "surplusage" is supported in the Second Superseding Indictment with specific text messages sent by Taylor and Brannon. The quoted text messages are evidence of the conspiracy charged in Count One of the Second Superseding Indictment: the defendants agreed to coerce unpaid labor, in the form of sexual services, from female members of KOGGC.

Prior to filing their Motion to Strike, the defendants moved to dismiss the entire indictment. In their motion to dismiss, the defendants argued that the Court should dismiss the sexual services allegations for failing to state an offense on the same ground as raised in the current motion: the sex acts are not labor and services for purposes of the forced labor charges (*See* ECF No. 218, PageID.3329–30).

---

[1]The threats of expulsion from KOGGC are not inconsistent with obtaining labor and services through force, threats of force, physical restraint, and threats of physical restraint, where the defendants first made the victims dependent on the organization and instilled in the victims a fear of leaving the organization. In fact, the defendants used threats of expulsion as part of a "scheme plan or pattern intended to cause [the victims] to believe" they would suffer "serious harm" if they did not continue laboring for their benefit. *See* 18 U.S.C. § 1589(a)(4) (prohibiting providing or obtaining labor or services of through, *inter alia*, "any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services, that person . . . would suffer serious harm").

The government's Consolidated Response Brief to the defense motions to dismiss detailed the legal and factual errors in the defense argument and how the sexual services alleged in in the Second Superseding Indictment constitute labor and services under § 1589. (ECF No. 245, PageID.4792–98). While the parties await the Court's decision on this fully briefed issue, the defendants filed the instant motion seeking to strike the allegations as "surplusage."

## II. ARGUMENT

Federal Rule of Criminal Procedure 7(d) provides, in relevant part, that "upon the defendant's motion, the court *may* strike surplusage from the indictment or information." Fed. R. Evid. 7(d) (emphasis added). Therefore, the rule is permissive, not mandatory, and the decision whether to strike language from the indictment is within the Court's sound discretion. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). A motion to strike surplusage should be granted only if the challenged language is both irrelevant and prejudicial. *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). "'[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant).'" *Id.* at 550 (quoting *United States v. Thomas*, 875 F.2d 559, 562 n.2 (6th Cir. 1989)).

Motions to strike surplusage are generally disfavored, and Rule 7(d) is to be construed strictly against striking surplusage. *Kemper*, 503 F.2d at 329. An order to strike surplusage, accordingly, requires an exacting standard, and courts are often slow to grant a motion to strike surplusage. Wright & Miller, *Federal Practice and Procedure* § 128 (5th ed. 2026). The determinative question, therefore, "is not the potential prejudice, but rather the relevance of the allegation to the crime charged in the indictment. If the evidence of the allegation is admissible and relevant to the charge, then despite prejudice, the language will not be stricken." *United States v. Garton*, No. 3:08-cr-31-JMH, 2009 WL 1424429, at *2 (E.D. Ky. May 21, 2009).

The defendants assert that the allegations in paragraphs 18 and 35-40 are "irrelevant" to the government's forced labor and money laundering charges, which they characterize as focused on the forced labor coerced from the named victims and others inside the call centers and the proceeds they laundered from that labor. This assertion is unfounded.

The defense characterization of the allegations as "irrelevant" amounts to a fundamental misunderstanding of the applicable law and the Second Superseding Indictment. Contrary to defendants' claims, the sexual services that Taylor demanded were "labor or services" under the forced labor statute. Generally, many courts have confirmed that the terms "labor" and "services" should be construed broadly, be given their ordinary meaning, and are not limited to labor or services in

the economic sense. *See Gilbert v. United States Olympic Comm.*, No. 18-CV-00981-CMA-MEH, 2019 WL 1058194, at *8 (D. Colo. Mar. 6, 2019), *report and recommendation adopted in part, rejected in part*, 423 F. Supp. 3d 1112 (D. Colo. 2019) (finding coerced sexual acts to fall within the definition of "labor or services); *Bistline v. Parker*, 918 F.3d 849, 871-72 (10th Cir. 2019) (finding that former church members pled plausible forced labor claims against church and its leader by alleging that they were ordered to perform traditional labor or sexual acts for the church leaders' benefit through a scheme involving psychological abuse and nonviolent coercion); *Ricchio v. McLean*, 853 F.3d 553, 556 (1st Cir. 2017) (citing *Kaufman* for the proposition that "labor or services" under § 1589 is not limited to "work in the economic sense" and extends to forced sexual acts); *United States v. Raniere*, 384 F. Supp. 3d 282, 313 (E.D.N.Y. 2019) (finding that performing personal favors and errands for the cult leader defendant generally falls within the broad definition of "labor or services" and that any question of whether a specific favor or errand falls within that definition is a question of fact to be determined at trial); *United States v. Aman*, No. 3:19-CR-85, 2022 WL 3371320, at *7 (E.D. Va. Aug. 16, 2022), *aff'd sub nom. United States v. Chaudhri*, 134 F.4th 166 (4th Cir. 2025) (defining "labor or services" to mean "work or the performance of any particular task or set of tasks, [including] any form of physical or mental effort or exertion to perform such work or tasks").

In accordance with established precedent and legislative history, the Sixth Circuit has adopted a broad definition of labor and services. And although the Sixth Circuit has not yet specifically addressed whether sexual acts—here, requiring women to masturbate on camera and send sexually explicit images and videos—qualify as "labor or services" under § 1589, other courts have found that forced sex acts qualify as labor or services under § 1589.

In *United States v. Callahan*, the Sixth Circuit broadly construed the meaning of "labor or services" under § 1589:

> The term "labor or services," which is not defined by [§ 1589], is viewed in accord with its ordinary meaning. Webster's Third New International Dictionary (1993) defines "labor" as "expenditure of physical or mental effort esp. when fatiguing, difficult, or compulsory;" and "service" is defined as "the performance of work commanded or paid for by another."

*United States v. Callahan*, 801 F.3d 606, 620 (6th Cir. 2015). Although the coerced conduct in *Callahan* did not involve sexual acts, this definition shows how expansive the Sixth Circuit interprets "labor or services." And, significantly, in arriving at this expansive definition, the court cited two out of circuit cases involving sexual acts: *United States v. Kaufman*, 546 F.3d 1242 (10th Cir. 2008), and *United States v. Marcus*, 628 F.3d 36 (2d Cir. 2010). *See Callahan*, 801 F.3d at 620. In both *Kaufman* and *Marcus*, forced labor convictions were affirmed where the labor or services at issue involved sexual activities.

*United States v. Kaufman* involved the operators of a residential care facility in Kansas who were convicted of forced labor under § 1589 and related offenses for conduct that included compelling mentally ill residents to perform sexual acts. *Kaufman*, 546 F.3d at 1248-50. The coercion used was psychological rather than physical force and involved the defendants exploiting the residents' cognitive vulnerabilities and their dependence on the facility for housing, care, and community to compel them to work nude on the farm and engage in sexual activities. *Id.* The Tenth Circuit affirmed the convictions, holding that § 1589 is not limited to traditional labor relationships and that sexually exploitative conduct compelled through psychological coercion constitutes obtaining "services" within the meaning of the statute. *Id.* at 1260-63.

The *Kaufman* court specifically rejected the defendants' challenge to broad jury instructions defining "labor" as "the expenditure of physical or mental effort" and "services" as "conduct or performance that assists or benefits someone or something," and rejected their argument that the compelled labor or services must have an economic or commercial dimension. *Id.* at 1260-62 ("[W]e are persuaded that the involuntary servitude and forced labor statutes apply to coerced acts other than 'work in an economic sense.'"). In so holding, the Tenth Circuit emphasized that "sexual abuse was 'a badge and incident of servitude which is distressingly common, not just historically, but for young women who find themselves in

coercive circumstances today.'" *Id.* at 1262 (quoting *United States v. Udeozor*, 515 F.3d 260, 266 (4th Cir. 2008)). The court also emphasized that "while the legislative history does not address situations where traffickers have intimate relationships with their victims, the court's survey of the [Trafficking Victims Protection Act's] legislative history reveals no expressed intention to preclude criminal liability in those contexts." *Id.* at 1263 (quoting *United States v. Marcus*, 487 F. Supp. 2d 289, 301 (E.D.N.Y. 2007), *affirming forced labor conviction but vacating sex trafficking conviction on other grounds*; 628 F.3d 36 (2d Cir. 2010).

In *United States v. Marcus*, the charges arose from a BDSM-based sex trafficking and forced labor operation in which the defendant recruited a woman into a sexual relationship and used psychological manipulation, isolation, and physical abuse to compel her to engage in sexual acts and work on a sex website. *Marcus*, 628 F.3d at 39-41. The defendant argued that the work on the BDSM website was volunteered as a part of their intimate relationship and was, therefore, akin to "domestic chores" and not covered by § 1589. *Id.* at 44. The court rejected this argument, holding that the statute "unambiguously" applied to the defendant's conduct. *Id.* at 44-46. The court emphasized, "[a]bsent ambiguity in the statutory text, '[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from [the statutory] language.'" *Id.* at 44

(quoting *United States v. Albertini,* 472 U.S. 675, 680 (1985)). Finding no ambiguity, the court affirmed the defendant's forced labor conviction. *Id.* at 45-46.

Thus, the unambiguous language of § 1589, the legislative history, and the case law interpreting the statute plainly indicate that the sexual activities alleged in the Second Superseding Indictment fit comfortably within the meaning of "labor" and "services" under § 1589. The sexual services that Taylor compelled women to perform without payment—taking pictures and videos of their exposed genitals, in the way and at the time that Taylor directed, narrating the sexual activities, and sending the images to Taylor—constitute "labor" and "services" under the plain meaning of the terms and this precedent. The characterization of the allegations as "irrelevant" is patently wrong.

Altogether ignoring *Callahan*, *Marcus*, and *Kaufman*, the defendants instead cite three out-of-circuit district court decisions that struck as surplusage allegations that those courts found unrelated to the charges. (ECF No. 272, PageID.5091–94). *See United States v. Schofield*, No. CRIM 06-CR-427 JCC, 2006 WL 3408101, at *3 (E.D. Va. Nov. 22, 2006); *United States v. Xiong*, No. 07-CR-112, 2007 WL 2703859, at *12 (E.D. Wis. Sept. 14, 2007), report and recommendation adopted, No. 07-CR-112, 2007 WL 4206640 (E.D. Wis. Nov. 26, 2007); *United States v. Trump*, 736 F. Supp. 3d 1206, 1217 (S.D. Fla. 2024). None of the defendants in these cases were charged with forced labor. None of these cases analyze surplusage

in the context of the forced labor statute. In the context of other statutes, these cases stand for the unremarkable principle that allegations unrelated to the crimes charged may be struck as surplusage. By contrast, in the instant case the allegations regarding sexual services that women were compelled to provide are part of the conspiracy to obtain labor and services with which the defendants are charged.

The defendants also claim that the sexual services performed for Taylor are irrelevant to the government's prosecution, because they are not tied to the call center labor. But the government's indictment and proofs have never focused exclusively on the forced labor in the call centers. For example, the indictments in this matter have consistently alleged that Taylor compelled labor from his armor bearers in the form of a variety of personal services, including providing food and transportation for him and transportation for women from ministry houses, airports, and other locations to him and to ensure they took "Plan B emergency contraceptives." *See* Indictment, ECF No. 1, PageID.3; First Superseding Indictment, ECF No. 91, PageID.960; Second Superseding Indictment, ECF No. 194, PageID.2460. Similarly, as the government already addressed in its Consolidated Response Brief to the Motions to Dismiss, the Second Superseding Indictment separately alleges that the coerced sexual acts themselves constitute another form of compelled labor. (*See* ECF No. 245, PageID.4793 n.3). The

defendants' attempts to misconstrue the government's allegations and theories are contradicted by the plain language of the indictment.

The defense's characterization of the allegations and texts as gratuitous is also wrong. Taylor's sexual demands were pervasive and prolific, and they are pertinent to the forced labor charges. Because these allegations are relevant to the charges against the defendants—indeed, going to the very core of the government's theory of one form of forced labor and services in this case—the defendants' motion fails under Rule 7(d). *See Moss*, 9 F.3d at 550. This is true even if these allegations are "prejudicial" against the defendants, as relevant allegations "cannot be considered surplusage no matter how prejudicial" they are. *See Thomas*, 875 F.2d at 562 n.2.[2]

The defense submitted in support of their motion declarations under seal from two of the women who sent sexual material to Taylor. For at least two reasons, though, the declarations do not assist factually or legally in determining whether the sexual services language in the indictment is surplusage.

---

[2] The germane examples in the indictment—which the defendants characterize as "striking, explicit, and often vulgar or salacious"—are actually measured and constitute a mere sampling of Taylor's scheme. The indictment's narrow tailoring is illustrated by examples of evidence not included: Taylor's use of racial and anatomical slurs to coerce women; Taylor's interest in sexually explicit images of a minor; and Taylor's arousal at the description a woman provided of her molestation by a family member at a young age.

First, the declarations present opinions that differ from the evidence in this case. Such opinions and disputes may or may not be appropriate at trial; they are not dispositive or even pertinent at this pre-trial stage when the Court simply is called upon to decide if the allegations are relevant to the charges against the defendants.

Second and undeniably, the allegations supported by quoted texts in paragraphs 18 and 35-40 are not only relevant to the charges against the defendants, they are germane to the forced labor conspiracy charged in the Second Superseding Indictment. The conspiracy to commit forced labor charged in Count One does not require the government to prove that F-1 or F-2 felt victimized by the defendants or even that any of the defendants actually compelled labor and services from F-1 or F-2. Rather, the conspiracy count simply requires proof of an agreement between the defendants to coerce women to perform sexual services for Taylor. The language the defense seeks to strike details proofs of the conspiratorial agreement in the texts between the defendants, including multiple instances where Taylor directed Brannon to communicate with the women from whom he wanted sexual content to encourage or direct them to comply with his demands. *See* ECF No. 194, ¶¶ 36g–h, j, PageID.2478–79; ECF No. 194, ¶¶ 37a–l, PageID.2484–87.

Because the allegations and evidence quoted in the Second Superseding Indictment regarding sexual services provided by women to Taylor are factually

and legally relevant to the forced labor charges, the defense motion fails under Rule 7(d). *See Moss*, 9 F.3d at 550. This is so even if these allegations are "prejudicial" as relevant allegations "cannot be considered surplusage no matter how prejudicial" they are. *See Thomas*, 875 F.2d at 562 n.2.

## III. CONCLUSION

For the reasons argued above, defendants' joint motion to strike should be denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/*Sarah Resnick Cohen*
SARAH RESNICK COHEN
CRAIG WININGER
DIANCE PRINC
Assistant U.S. Attorneys
211 W. Fort St., Ste. 2001
Detroit, Michigan 48226

A. TYSEN DUVA
Assistant Attorney General

*s/ Christina Randall-James*
CHRISTINA RANDALL-JAMES
PATRICK JASPERSE
Trial Attorneys
Department of Justice
Criminal Division
Humans Rights and Special Prosecutions Section
1301 New York Avenue, NW
Washington DC 20530

Date: October 22, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on October 22, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*s/Sarah Resnick Cohen*
SARAH RESNICK COHEN
Assistant U.S. Attorney