UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

Plaintiff,

v.

D-1 David Taylor,
D-2 Michelle Brannon, and
D-3 Kathleen Klein

Defendants.
_________________________________/

Criminal No. 25-20560
Hon. Susan DeClercq

## REPLY IN SUPPORT OF MOTION TO STRIKE SURPLUSAGE

Must the government humiliate its "victims" to save them? The government's brief alleges that Pastor Taylor:

> sent a voluminous number of texts to dozens of women directing them to send him sexually explicit images; he made space for them to perform sexually for him in the mansions he purchased with money from his forced labor scheme; and he arranged for them to have time off from their unpaid labor in the call centers so they would be available for his sexual commands.

Opp. 2. Of these supposed "dozens" of women, the government chose four, F-1 through F-4, to feature in the SSI. Though the government refused to identify them to defense counsel, two of them found their way to defense counsel after the SSI was issued. They came forward with sworn declarations expressing their horror and embarrassment that the government publicized their private messages without their consent, especially after they had told the government in interviews that it was wrong

about everything—that they were not victims.

Confronted with these protestations from the people it supposed itself to be rescuing, and notwithstanding its obligations under the Crime Victims' Rights Act to treat "victims" "with fairness and with respect for the victim's dignity and privacy," the government offers not a word of concern for these women and what they have to say. 18 U.S.C. § 3771(a)(8); *see also* Am. Pro. Order, ECF No. 133 at 6 (quoting same). As this Court noted in entering its Amended Protective Order:

> [P]ublicizing the alleged victims' and witnesses' identities and explicit materials will compromise their privacy and dignity interests. Public disclosure of the alleged victims' and witnesses' identities may harm their employment and increase potential for harassment or humiliation. If no protective measures are taken, the alleged victims and witnesses will likely be subject to inquiry and scrutiny from friends, neighbors, present and future employers, and other members of the community. Once disclosed and posted to the internet, the alleged victims' and witnesses' identities and their alleged exploitation will be forever linked, subjecting them to psychological harm.

Am. Pro. Order, ECF No. 133 at 88.

These concerns should not depend on whether an alleged victim's testimony is favorable to the government. F-2, for instance, found out about her private messages being put into the SSI from a *Facebook message*, and was then contacted by a friend who had seen the messages and could tell they were with F-2. Mot. Ex. B ¶ 14. F-1 similarly noted, "[i]t's great to use a code-name for me, but it's not especially hard for members of our community to figure out who I am from context clues." Mot. Ex. A ¶ 5. Still, the government dismisses F-1 and F-2's declarations

as mere "opinions that differ from the evidence in this case." Opp. 13.

While it's difficult to imagine the government is better positioned than F-1 and F-2 to interpret their messages, we agree with the government that it will be welcome to argue at trial that free-willed adults like F-1 and F-2 are "victims," despite what they say. *Compare* Sept. 30, 2025 Hr'g Tr., ECF No. 33, at 33:14 ("Your honor, the government's position is that every single person who works for KOGGC or JMMI is a victim. Whether they have come forward and admitted to themselves and to the government that they are a victim is another question."), *with* ECF No. 241-1 (declarations of 50 KOGGC live-in-ministers, 44 of them women, rejecting the government's allegation that they are victims).[1] For now, the question is whether these individuals' private, sensitive messages should be broadcasted to the world in a public filing.

Rule 7(d) applies to material that is both (1) immaterial or irrelevant and (2) inflammatory and prejudicial. *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). Here, the government does not contest that the messages it added in the SSI are inflammatory and prejudicial. Rather, the government's argument is that the messages are nonetheless relevant to its charging theory and thus includable, whatever the personal consequences to those the government is purportedly trying

[1] As to F-3 and F-4, while we have not been provided with their identities, we believe based on our research that they do not even meet the government's definition of "laborers," as they never lived full time at the Ministry, and at least one was paid tens of thousands of dollars for her work.

to save, like F-1 and F-2.

The problem with this position is that the government's charging theory has shifted since the SSI. The SSI *seemed* to advance a theory of forced labor in which Pastor Taylor and Ms. Brannon—though not Ms. Klein—allegedly used sexually explicit materials as kompromat, for controlling female "laborers." SSI ¶ 39 ("TAYLOR then used the sexually explicit images to control and exploit female laborers."). And F-1 and F-2 specifically rejected this premise, making clear that the term "laborers" did not apply to them in the first place, except insofar as they were laborers for Christ. Ex. A (F-1 Dec'l. ¶ 7); Ex. B (F-2 Dec'l. ¶ 13). The government now asserts that Count One actually charges four types of forced labor: "[1] forcing victims to work in call centers, [2] act as armor bearers for Taylor, [3] perform sex acts for Taylor, and [4] take sexually explicit pictures and videos for Taylor." Opp. 2. The SSI says nothing of this four-theory conspiracy.

Where, for instance, does the SSI allege that armor bearers were subjected to forced labor? It says that Pastor Taylor recruited individuals to serve as unpaid "armor bearers" who carried out his demands. SSI ¶ 10. Assuming that's labor, the SSI includes no allegation that it was *forced*. And what of Defendant Klein, who is not alleged to be connected to the third and fourth types of forced labor at all, but is nonetheless charged under Count One? Finally, it appears the government's sex conspiracy theory rests on a more limited theory of coercion than the rest of Count One—based *entirely* on threats of reputation and *spiritual consequences*—without

reference to other claims of coercion made in the SSI (*e.g.*, withheld food and sleep, or physical coercion). SSI ¶ 18. Of course, as we have explained ad nauseam, basing an indictment on threats of spiritual consequences violates the First Amendment. *United States v. Ballard*, 322 U.S. 78, 86–87 (1944).

We again acknowledge the Sixth Circuit's statement that, "if the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993). But, while we do not doubt that the government hopes to put every one of these messages in front of a jury, the messages are not relevant to the actual theory alleged in the SSI. *Cf. United States v. Najor*, No. 13-20462, 2014 LX 39636, at *14 (E.D. Mich. June 11, 2014) (striking a paragraph from an indictment as inconsistent with other portions of its case theory). The messages are certainly not "essential" to the underlying charge. *Kemper*, 503 F.2d at 329. They serve no purpose other than to poison the public record and smear an ordained minister with no criminal history with salacious messages between him and other consenting adults.[2] *See also* Opp.

[2] Pastor Taylor disputes every allegation in the SSI. But even taking the government's allegations at face value, the text messages span years of time and are between Pastor Taylor and consenting adults whom he dated. The women in those very text messages have, in sworn affidavits, stated that their relationships and those messages and images were consensual—not coerced. Here, the government disputes those women's own characterizations and attempts to manufacture a crime where the actual parties to the communications say there was not one.

12 n.2.

Nor are we aware of a court relying on this "hopes" statement to overrule the objections of *an alleged "victim"* whose statements were included in an indictment against their will. The Court should use its "sound discretion" to prevent F-1 and F-2 from being further victimized as the government attempts to save them. *United States v. Emuegbunam*, 268 F.3d 377, 394 (6th Cir. 2001).

## CONCLUSION

Having chosen to blast F-1 and F-2's intimate messages to the world as evidence of an ever-shifting crime, the government now shows zero interest in what these supposed "victims" have to say. The Court should not adopt the government's indifference. It should grant the motion.

DATED: October 30, 2026

Respectfully submitted,

**Allison L. Kriger**
LaRene & Kriger, P.L.C.
500 Griswold St.
Suite 2400
Detroit, MI 48226
313-967-0100
allison.kriger@gmail.com

**Laurence H. Margolis**
Margolis Law Firm
214 South Main Street, Suite 202
Ann Arbor, MI 48104
734-994-9590
larry@lawinannarbor.com

**Todd Russell Perkins**
615 Griswold
Suite 400
Detroit, MI 48226
313-964-1702
tperkins@perkinslawgroup.net

**Andrew T. George**
Bourelly, George, and Brodey PLLC
1050 30th St. NW
Washington, DC 20007
202-753-5012
andrew.george@bgblawyers.com

**J. Alex Little**

**Brent Adams Hannafan**
**Zachary C. Lawson**
Litson PLLC
54 Music Square East, Suite 300
Nashville, TN 37203

615-985-8205
alex@litson.co
brent@litson.co
zack@litson.co

*Counsel for Defendant Taylor*

**George B. Donnini**
**Joseph E. Richotte**
BUTZEL
Columbia Center
201 W. Big Beaver Rd. #1200
Troy, MI 48084
248-258-1616
donnini@butzel.com
richotte@butzel.com

*Counsel for Defendant Brannon*

**R. Michael Bullotta**
Bullotta Law PLLC
Ford Building
615 Griswold St., Suite 1620
Detroit, MI 48226
313-400-5775
michael@bullottalaw.com

*Counsel for Defendant Klein*